GLADNEY, Judge.
Sam W. Monk brought suit against Coal Operators Casualty Company and Hartford Accident & Indemnity Company for the payment of workmen’s compensation in the sum of $30 per week for four hundred weeks, commencing May 20, 1952, subject to certain payments. It is alleged the two defendants are solidarily liable. Recovery also was sought against Hartford Accident & Indemnity Company for medical expenses, past and future, in connection with the accident up to $12,000, and for such amount as may be due a declaratory judgment is prayed. Further claims by plaintiff against Coal Operators Casualty Company include $500 medical expenses, and a demand for statutory penalties. After trial judgment was rendered in favor of plaintiff awarding workmen’s compensation against Coal Operators Casualty Company but rejecting his other demands against this defendant. The decree also dismissed all of plaintiff’s claims against Hartford Accident & Indemnity Company.
From the judgment so rendered Coal Operators Casualty Company has appealed suspensively and devolutively. In this court the plaintiff-appellee has filed an answer to the appeal in which he re-asserts his claims against Hartford Accident & Indemnity Company for all future medical expenses to the amount of $10,000, and the additional sum of $597.97 medical expenses incurred but unpaid. Finally, the answer renews plaintiff’s claim against both defendants for statutory penalties.
A motion on behalf of Hartford Accident & Indemnity Company asks dismissal of the *84 answer to the appeal insofar as it pertains to it.
Before proceeding to the merits of the case on appeal we deem it advisable to determine the right of plaintiff-appellee to reassert its claim against Hartford Accident & Indemnity Company. Orders of appeal were taken only on behalf of Coal Operators Casualty Company. Neither plaintiff nor Hartford Accident & Indemnity Company appealed from the judgment. Coal Operators Casualty Company does not claim through argument or brief it is aggrieved by the judgment rejecting Monk’s demands against Hartford Accident & Indemnity Company and appears without interest in any controversy between Monk and Hartford Accident & Indemnity Company.
It is well established 'by repeated decisions of the appellate courts in this state, an answer to an appeal cannot serve the purpose of an appeal with respect to bringing into court parties against whom a plaintiff’s claims have been dismissed. Thalheim v. Suhren, 1931, 18 La.App. 46, 137 So. 874; Maheu v. Employers Liability Assurance Corporation, Ltd., La.App., 1946, 25 So.2d 363; Reid v. Monticello, La.App., 1948, 33 So.2d 760; Hirsch v. Kendrick, La.App., 1950, 43 So.2d 692; Macaluso v. Herrin, La.App., 1951, 51 So.2d 125.
In Reid v. Monticello, supra, the Supreme Court observed [215 La. 444, 40 So.2d 814, 815]:
“The sole object of an appeal is to give an aggrieved party to a suit recourse to a superior tribunal for the correction of a judgment of an inferior court (Article 564 of the Code of Practice) and such right is extended not only to the parties to the suit in which the judgment is rendered, but also to a third party when such third party is allegedly aggrieved by the judgment. Article 571.”
Plaintiff’s counsel relies upon Reid v. Monticello as sustaining his right to answer the appeal of Coal Operators Casualty Company and therein and thereby prosecute demands against Hartford Accident & Indemnity Company which were rejected in a-judgment from which neither he nor Hartford Accident and Indemnity Company took an appeal. In the cited case the Supreme Court had before it for review a ruling of the court of appeal sustaining a motion of the Hardware Indemnity Insurance Company of Minnesota for dismissal as to it of an appeal taken by Frank Monticello and another from a judgment rendered against them in solido. There Frank Monticello, a defendant with rights against both defendants, was contesting a ruling of the court of appeal which dismissed his appeal. Thus, the facts of the cited case are inapposite.
We are of the opinion that the motion to dismiss the answer to the appeal should be and is hereby granted but only insofar as it relates to Hartford Accident and Indemnity Company. The latter insurer, therefore, is not before this court, and there arises no occasion for this court to examine the correctness of the judgment rejecting plaintiff’s demands against it.
Monk was severely injured on May 20, 1952-, while working on an oil well in the Cotton Valley area, of Webster Parish, Louisiana. His injuries were sustained when a joint of drill pipe or casing fell upon his head and shoulders. At the time of his injury the employee was a member of “Lowery’s Casing Crew”, a business operated by Larkin Lowery and engaged in the business of running casing and drilling or reworking oil wells. Coal Operators Casualty Company was at the time of the accident Lowery’s employer liability insurer. When Monk was hurt his crew was at work upon a well being drilled by Pen-rod Drilling Company and the equipment, machinery, etc. being used on the well belonged to Penrod Drilling Company. One of the employees of Penrod Drilling Company was operating the winch lifting the pipe that fell upon plaintiff.
When Monk was hurt, he was examined and given an emergency treatment by Dr. Garrett of Cotton Valley and then immediately placed under the treatment of Dr. *85 John B. Sutton, neurosurgeon, and his associate, Dr. Faludi. A fracture of the left clavicle was at the same time treated by Dr. Macpherson, an orthopedic specialist. The injuries suffered by plaintiff were diagnosed- by Dr; Sutton as follows:
“Diagnosis:
“1. Basal Skull fracture petrous portion of the entire temporal bone.
“2. Linear skull fracture, left occipital bone, extending toward the base.
“3. Traumatic subarachnoid hemorrhage.

“4. Cerebral concussion, and probably contusions, severe.

“5. Low grade menigeal infection, organism not identified, evidently secondary to contamination from basal skull fracture.
“6. Fracture of left clavicle (healed by time of discharged). The question of a posterior fossa or subcipital clot seems fairly well ruled out, but we will continue to observe him periodically, in the office!”
Plaintiff remained in the hospital fifty days following the accident and then was permitted to return home subject to observation. Dr. Sutton rendered a final discharge to plaintiff on November 18, 1952, as being able to return to, work. It is noteworthy Dr. Sutton did not again examine Monk although nearly a year elapsed before the case came to trial. Dr. Macpherson had previously released Monk from further treatment. On September 15, 1952, Dr. Mac-pherson evaluated the injury to the clavicle as resulting in “a total permanent disability at that time due to non-union of the left clavicle of approximately (15%) of the arm and 7%% of the body as a whole.” On the basis of medical reports received by it Coal Operators Casualty Company made workmen’s compensation payments until December 8, 1952, when such payments were stopped apparently in the belief plaintiff had fully recovered. During the fifty days plaintiff was in the hospital extensive surgery was required and-various expenses for services and medical supplies had accumulated up to September 5, 1952, totaling $2,451. A large portion of this amount-was paid by Penrod Drilling Company.
Inasmuch as Hartford Accident and Indemnity Company was not before the court the two questions presented herein are: (1) Is the plaintiff still totally disabled from the performance of his usual and regular work and, (2) Did the failure to pay plaintiff’s claims when notified subject Coal Operators Casualty Company to statutory penalties and attorney’s fees ?
After a careful review of the record we find ourselves in complete accord with the findings of our brother of the district court respecting 'plaintiff’s 'physical condition, and we adopt as our own this portion of his opinion:
“A number of witnesses testified on matters relating- to plaintiff’s physical condition. These witnesses were both lay witnesses and medical experts. The lay witnesses who testified were as follows : Sam W. Monk, plaintiff; J. M. Monk, father of the plaintiff, and Mrs. J. M. Monk, mother of the plaintiff.
“The medical experts who testified on plaintiff’s condition were: Dr. T. M. Deas, called as a witness on behalf of the plaintiff; Dr. Ford G. Macpherson, called as a witness on behalf of defendant; Dr. Edgar W. Booth, called as a witness on behalf of the defendant and Dr. John B. Sutton, called as a witness on behalf of the defendant.
“An examination of the lay testimony convinces me that.the plaintiff has been suffering from headaches, dizziness, ataxia, general weakness, malosia, nervousness, impairment of sight and hearing and sense of smell. It further reveals that this condition is greatly aggravated when the plaintiff attempts to perform work of any heavy nature, *86 and especially work which might overheat the plaintiff. The testimony shows that plaintiff, in January of 1952, attempted to return to his normal work of roughnecking, hut after working for a few days had to quit because of his physical condition. Prior to his accident, plaintiff was an extremely robust large young man weighing some 220 pounds. Since his accident, although he has not been working or taking exercise and has been largely sitting around his house, plaintiff has never regained his normal weight and at the time of the suit weighed only 190 pounds.
“The testimony of Dr. Deas, who examined the plaintiff shortly before the trial of this case and whose summary of clinical findings has been filed in the record, is based upon all of the findings of his own examination. Dr. Deas diagnosed the plaintiff’s condition as one of ‘post concussion syndrome.’ He further stated that the plaintiff was by reason of this condition disabled from pursuing his normal work and would continue to be disabled for an indefinite time in the future.
“The testimony of the defendant’s medical experts is all generally to the effect that the plaintiff was not suffering from any permanent disability at the time of the trial, which would disable him from performing his usual occupation. This testimony was also generally to the effect that, if he had any disability that same had no causal connection with his alleged injury.
“The Court is, therefore, placed in the usual position that occurs on the trial of a workman’s compensation case, in that there is a conflict in the medical testimony. I am of the opinion that the plaintiff was definitely disabled to do work of any reasonable character at the time of the trial of the case. This opinion is based on the personal observation of the defendant while on the stand during the trial, from the lay testimony and from the testimony of Dr. Deas. The testimony certainly convinced me that since his injury he has been suffering from some type of head injury, which rendered him disabled to do work of any reasonable character. The only serious question, in my mind, is whether or not the plaintiff established any causal connection between the injury and his apparent disability. In such cases, I do not think that it is necessarily the number of doctors who testify on a particular side that should form the court’s opinion. I, also, think the court should take into consideration the qualifications of the doctors, who testified, and, in this connection, I am fully aware of the fact that Dr. Sutton was the only expert who testified as a neurosurgeon, in that his practice is limited to treatment of the head, brain and nerves. However, Dr. Sutton had not examined the plaintiff for sometime prior to the lawsuit.
“In all compensation cases, it is the duty of the court to liberally construe the statute in favor of the employee and, in this case, I think such a liberal construction would result in arriving at a conclusion that the plaintiff is totally and permanently disabled and that his diability resulted from the accident sued upon.”
We are thoroughly satisfied, after a complete examination of the record that Coal Operators Casualty Company only discontinued payments of compensation to Monk after receiving competent medical advice that plaintiff could return to his job and perform his former duties with Lowery’s Casing Crew. We, therefore, are of the opinion, as was the district judge, that there is no basis for plaintiff’s claim for statutory penalties and attorney’s fees and that this demand was properly rejected by the trial court.
For the above reasons the judgment from which appealed is hereby affirmed at appellant’s cost.