115 So.2d 218 (1959)
William MOORE et al., Plaintiffs-Appellees,
v.
SHREVEPORT TRANSIT COMPANY, Inc., et al., Defendants-Appellants.
No. 9073.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1959.
*219 Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for Shreveport Transit Co., Inc.
Neil Dixon, Shreveport, for plaintiffs-appellees.
AYRES, Judge.
This is an action in tort wherein plaintiff, William Moore, seeks to recover damages for personal injuries, and plaintiff, Jewell Wheeler, seeks to recover property damage to his automobile, and damage for the loss of the use of his vehicle, as the result of a motor vehicle collision occurring May 9, 1958, at the intersection of Allen Avenue and Anna Street, in the City of Shreveport.
*220 Both avenue and street are hard-surfaced main thoroughfares for intracity traffic. Allen Avenue is a four-lane street running generally north and south and is intersected at right angles by Anna Street. Traffic at the intersection is controlled by the usual and customary electric signal light suspended over the center. The sequence of signals is green, amber (or caution), red and green, and the cycle consumes approximately one minute. However, for a brief interval, when green is shown for westbound traffic on Anna Street, the signals for traffic approaching the intersection from the other three directions are red. During this interval an arrow is shown in a second or lower green signal light indicating a superior right of way for traffic turning left into Allen Avenue. At the same time, however, traffic may, of course, continue straight ahead, westbound, on Anna Street.
At the time of the accident, near noontime, the street surfaces were wet and slippery from a recent downpour of rain which continued in a mist or drizzle.
Involved in the collision in the intersection was a trolley of the Shreveport Transit Company, Inc., operated by its employee, Robert G. Upchurch, and a truck of the Taylor-Seidenbach Company, Inc., driven by its employee, Isadore Holmes. The trolley was proceeding in a southerly direction on Allen Avenue, the truck west on Anna Street. Plaintiff Wheeler's automobile, driven and operated at the time by plaintiff William Moore, headed in an easterly direction on Anna Street, stopped before entering the intersection and was struck by the Taylor-Seidenbach truck after the truck had collided with the trolley in the intersection. Named defendants were the Shreveport Transit Company, Inc., Taylor-Seidenbach Company, Inc., and the latter's insurer, the American Mutual Liability Insurance Company.
Negligence charged by plaintiff to the operator of the trolley consists of his failure to keep a proper lookout or to keep his vehicle under proper control, and in driving at an excessive speed, and on entering the intersection on a red signal light. Negligence consisting of his failure to keep a proper lookout or to keep his vehicle under proper control and in entering the aforesaid intersection after the trolley had allegedly pre-empted the same was charged to the driver of the truck. Each of the defendants asserts its driver's freedom from fault and alleges that the negligence of the other constituted the sole proximate cause of the accident. The Shreveport Transit Company, Inc., however, further contends, in the alternative, that the driver of the Taylor-Seidenbach truck had the last clear chance to avoid the accident, but failed to avail himself of the opportunity to do so.
For the purpose of trial, the instant case was consolidated with Taylor-Seidenbach Company, Inc. v. Shreveport Transit Company, Inc., 115 So.2d 225, inasmuch as the actions were predicated upon the same accident.
In the consolidated case, plaintiff, Taylor-Seidenbach Company, Inc., seeks to recover of the defendant, Shreveport Transit Company, Inc., damages resulting from the aforesaid collision to its truck and for truck rental while its truck was undergoing repairs. The defendant therein reconvened for damages done to its trolley. Each of these parties' litigant charged negligence against the operator of the other's vehicle in general terms as heretofore enumerated, with the additional charge from the defendant that the driver of plaintiff's truck ran a red light.
On trial the issues were, by stipulation, reduced primarily to one as to whose fault the accident happened and, secondarily, as to the injuries sustained by plaintiff William Moore. After trial the court concluded that the accident was caused solely by the fault and negligence of Robert G. Upchurch, the operator of the trolley, and, accordingly, allowed recovery by all claimants against his employer, the Shreveport Transit Company, Inc. From the judgment *221 there rendered and signed in each case the Shreveport Transit Company has appealed. Plaintiff William Moore and Jewell Wheeler have answered the appeal of the Shreveport Transit Company, Inc., and prayed, first, that Wheeler be awarded damages for the loss of the use of his truck pending repair, and, second, that Taylor-Seidenbach Company, Inc., and the American Mutual Liability Insurance Company be condemned in solido with the Shreveport Transit Company, Inc.
A discussion of the first of these specifications will be pretermitted at this point. The other relief prayed for cannot be granted and the position taken by plaintiffs-appellees is untenable. Taylor-Seidenbach Company, Inc., is not a party before this court in the instant case on the appeal. An answer to an appeal cannot serve the purpose of an appeal with respect to bringing into court parties against whom a plaintiff's claim has been dismissed. Monk v. Coal Operators Casualty Company, La. App., 76 So.2d 82. See also authorities therein cited.
The question for determination involves factual issues. It may be first observed, however, that because of the location of a building and a tree at the northeast corner of the aforesaid street intersection, there was an obstruction to the view of both trolley operator and the truckdriver as they approached the intersection, making it impossible for each to see the other until they were in close proximity of the intersection. It may also be noted that on Anna Street, east of the intersection, is a viaduct, or railroad overpass, the distance of which, from the intersection, was shown in various estimates and from which it appears reasonable to conclude that the distance is approximately 100 feet.
To determine the actual facts of the occurrence of the accident, resort must be had to the testimony of the several persons who witnessed the accident and testified upon the trial. Plaintiff William Moore testified that as he proceeded easterly on Anna Street, he stopped before entering the intersection with Allen Avenue, although he had a favorable signal, because he saw the trolley approaching from his left at such a speed he did not think the driver could stop and avoid running the red light. While he made no particular observation of the approach of the Taylor-Seidenbach truck until momentarily before the actual collision between the trolley and the truck, he said that, as the trolley came into the intersection, the truck swerved to its left. Nevertheless, the left side of the trolley made contact with the right side of the truck which, glancingly, continued in a southwesterly direction, striking and breaking a utility pole and then striking his car, inflicting injuries to him and damaging his car.
Isadore Holmes, the truckdriver, testified that as he came over the crest of the overpass, with his truck heavily loaded with corrugated sheets estimated to weigh 6,000 pounds, the signal light was on "caution" and, on reaching the foot of the overpass, the light changed to green; whereupon he continued forward at a speed of approximately 25 miles per hour, intending to proceed westward on Anna Street. His testimony is that the speed of the trolley was approximately 30 to 35 miles per hour, which he estimated after he passed beyond the obstruction and just before either vehicle entered the intersection. Holmes further testified that the trolley struck the rear right-hand side of his truck at about the taillight, and, notwithstanding his effort to swerve to the left, his truck continued forward, struck the utility pole and plaintiff's car.
G. R. Blackwell, an employee of the Southwestern Gas & Electric Company for the past 25 years, was an eye-witness to the accident. Blackwell was driving north on Allen Avenue and stopped in the inner lane for northbound traffic as he approached Anna Street. His reason for stopping was that the signal light was red to traffic on Allen Avenue. He further stated the trolley, running the red light, first entered the intersection. His estimate was that the *222 speed of the trolley was 30 to 35 miles per hour, as stated by the operator, following the accident, with which he agreed, and that the speed of the truck was about 30 miles per hour. His testimony is that the trolley operator endeavored to stop when the trolley was a distance of about 20 feet from the intersection, when the signal light turned red, by applying his brakes, and locking his wheels; skidding, the vehicle headed to its left and slid into the intersection. The application of his brakes was ineffective because of the wet and slippery surface of the street. His estimation of the truck's speed, at the moment of collision, was 20 miles per hour, but that due to the weight of the load he did not think the truckdriver could have stopped short of the collision.
Blackwell further testified there was no other vehicle parked alongside his, or that had immediately preceded him into the intersection, as was testified by Upchurch and Mrs. Oma Lynn. The latter testified she stopped in the right-hand northbound traffic lane on Allen Avenue, even though the light was green, for traffic proceeding north, and she intended making a right turn. This she accounts for by saying that the Taylor-Seidenbach truck was approaching the intersection at a fast rate of speed on an unfavorable, or red, light.
Another eye-witness was Donald Overton Callen. As this witness came over the viaduct on Anna Street, facing westerly in the direction of the aforesaid intersection, he observed the truck ahead of him travelling at 20 to 25 miles per hour. He could not see the trolley until it entered the intersection. After he saw it, he estimated its speed at about 25 miles per hour. His observation was that the truckdriver applied his brakes, swerved and turned the truck to its left as it entered the intersection and continued its movement therein. This witness made no observation as to the signal light before the actual impact, but, immediately thereafter, saw the light was green for traffic on Anna Street.
Ernest Rock, Holmes' companion and fellow employee of Taylor-Seidenbach Company, Inc., said their speed was 20 to 25 miles per hour and that the light was on caution as they came over the viaduct, and thereafter turned green. He saw the trolley only momentarily before the actual impact. Holmes and Rock were mistaken in their testimony as to the sequence of the changes in the signal light. "Caution" does not precede "green" but precedes "red." A test made soon after the occurrence of the accident confirmed the order of sequence as hereinabove given. However, they were fully corroborated in their statements by Blackwell and Callen, two disinterested witnesses, that the Taylor-Seidenbach truck approached and entered the intersection on a favorable signal and that the trolley made its entry thereof on a red light.
For the defendant, in addition to Mrs. Lynn, Robert G. Upchurch was called as a witness. Upchurch testified that as he approached the intersection at 10 to 12 miles per hour the signal light turned amber, or "caution," when he was approximately 20 feet distant, whereupon he applied his brakes, but, on meeting a car, released them to prevent sliding into it, whereupon he straightened the trolley in its course and then reapplied his brakes. He only saw the truck about the time it was entering the intersection, which he claims to have already entered. This witness saw no traffic facing him on Allen Avenue, nor plaintiff's car stopped on Anna Street near the southwest corner of the intersection. According to his testimony, the light never turned red before he entered the intersection, and, at the time of the collision, he was barely moving.
From a consideration of the foregoing testimony we are convinced that it preponderates in plaintiff's favor in each of these cases. Under the existing circumstances and weather conditions, the trolley was travelling at an excessive and unsafe rate of speed. The operator failed to keep and maintain a proper lookout and *223 did not observe as he was about to enter the intersection he had an unfavorable light. Such observation was not made until he was too near the intersection to stop due to the wet, slippery surface of the street, whereupon, on applying his brakes, his vehicle skidded into the intersection, notwithstanding a red light. This resulted from the fact that he did not have the trolley under proper control.
We are further convinced that Isadore Holmes, the driver of the Taylor-Seidenbach truck, was free of negligence. He was operating his truck within the bounds of a reasonable rate. He had a favorable light and both time and opportunity to safely negotiate the intersection, except for the fact that Upchurch failed to make proper observation, did not keep his trolley under control, and entered the intersection on an unfavorable signal.
Nor do we find that the trolley preempted the intersection. As was said in Butler v. O'Neal, La.App., 26 So.2d 753, 756:
"Pre-emption of an intersection, under the principles established by our jurisprudence, does not mean the prior entry of a vehicle simply by a matter of a few feet, or, in relation to the time element, by a fraction of a second ahead of another vehicle, but, in order to support a charge of negligence, such pre-emption must be construed to mean an entry into an intersection with the opportunity of clearing the same without obstruction of the path of another vehicle under normal and reasonable circumstances and conditions."
See also: Aucoin v. Houston Fire & Casualty Co., La.App., 44 So.2d 127; Hooper v. Toye Bros. Yellow Cab Co., La.App., 50 So.2d 829; Hardware Mut. Cas. Co. v. Abadie, La.App., 51 So.2d 664; Thibodaux v. Willet, La.App., 70 So.2d 728; Dodd v. Bass, La.App., 76 So.2d 572; Mansfield v. Toye Bros. Yellow Cab Co., La.App., 78 So.2d 544.
Therefore, an entry of an intersection, to constitute a pre-emption, must be made with the reasonable expectation on the part of the operator of a motor vehicle to clear the same without obstruction of other vehicular traffic operating under normal and reasonable circumstances and conditions. Such entry must be made under such circumstances as not to require an emergency stop by other traffic in order to prevent an accident. Martin v. Adams, La. App., 88 So.2d 476.
Appropriate to the truckdriver's position is the following observation made by the Supreme Court in Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292, 294-295:
"* * * it also can not be disputed that under the traffic light system a motorist, who is proceeding on a proper signal, should not be held to the same degree of care and vigilance as if no such system prevailed. He has the right to assume that the signals are understood and will be observed and he is not required to anticipate that pedestrians or other motorists will, in violation of law, enter a crossing on a wrong signal. The danger at such crossing is less than if there were no such signals and therefore less care is exacted."
To repeat, the evidence is convincing that Holmes, the driver of the Taylor-Seidenbach truck, was proceeding at a normal rate of speed, even under the prevailing atmospheric conditions, and on a favorable light. In so doing, he was justified in assuming that any motorist approaching on either side of the intersection would bring his vehicle to a stop, as the green light facing him indicated a red light faced other motorists who might be approaching from the cross street. There was no showing of any cause for alarm on Holmes' part, or for him to anticipate that the unfavorable signal for traffic on the intersecting street would be disregarded and the law violated. He was not bound under the *224 circumstances, shown to exist in this case, to anticipate the negligence of another motorist. Appropriate here is an observation of the Supreme Court in Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292, 295, quoted from a dissenting opinion in the court of appeal in the same case (17 So. 2d 506, 513-514):
"We are living in an advanced stage of the motor age. Heavy and congested vehicular traffic on the streets and highways is a daily rule rather than an exception. In these circumstances, it is vital to the public interest that the traffic rules and regulations be adhered to strictly (particularly with reference to the traffic semaphore system) as the motorist is, to a large extent, compelled to operate his car in the belief that the law will be obeyed by others. Hence, in gauging the fault which is attributed to one, who was operating his car in obedience to positive law, the courts should be convinced that the dereliction was most substantial and that it was such a direct factor that, without it, the accident would not have occurred."
The conclusion is inescapable that Holmes was operating his truck in obedience to positive law at a reasonable rate of speed and on a favorable light. We perceive of no dereliction on his part that could be said to be substantial or of such a direct factor without which the accident would not have happened.
Nor do we find that the doctrine of last clear chance finds any application to the facts and circumstances of this case. The doctrine, as applied to those operating motor vehicles, is that where a motorist sees, or where by the exercise of due diligence he should and could have seen, a person in peril, of which such person is unaware or unable to extricate himself, the duty devolves upon the motorist to use every possible available means to avert injury, notwithstanding the negligence of such person; and, if the motorist fails to perform such duty, the last clear chance doctrine applies, even though such negligence continues to the moment of the occurrence of the accident. Rottman v. Beverly, 183 La. 947, 165 So. 153; Jackson v. Cook, 189 La. 860, 181 So. 195.
For the successful invocation of the doctrine, the existence or presence of three essential elements must be established: First, that the other person was in a position of peril of which he was unaware or from which he was unable to extricate himself; second, that the person against whom such doctrine is charged actually discovered or was in a position where he should have and could have discovered such other person's peril; and, third, that at the time such person charged with responsibility could have, with the exercise of reasonable care, avoided the accident. Brown v. Louisville & Nashville R. Co., 5 Cir., 234 F.2d 204; Id., D.C., 135 F.Supp. 28; Segreto v. American Automobile Ins. Co., 5 Cir., 239 F.2d 641; Id., D.C., 137 F.Supp. 194; Maryland Casualty Co. v. Allstate Ins. Co., La.App., 96 So.2d 340, 344; Ballard v. Piehler, La.App., 98 So.2d 273, 276; Russo v. Texas & P. Ry. Co., 189 La. 1042, 181 So. 485; Newton v. Pacillo, La.App., 111 So.2d 895.
The question of liability was resolved by the trial court against the defendant, Shreveport Transit Company, in both cases. This conclusion, in our opinion, finds ample support in the record.
As indicated hereinabove, the property damage to plaintiff Wheeler's automobile was stipulated. No allowance was made, however, for the loss of the use of his vehicle while it was undergoing repairs, on account of which the evidence establishes that for two weeks, or for a period of 12 days, Wheeler rented a car at the rate of $3 per day, and, for one week, utilized taxi service at a daily expenditure of $2.50. This covered six days' operation. No reason has been advanced why an allowance should not be made for this expenditure. This is a proper item of damages.
*225 No contention has been made that error was committed in awarding plaintiff William Moore the sum of $100 in compensation for the injuries sustained by him. Nor has he answered the appeal and prayed for an increase. The evidence shows that he sustained a slight laceration of his lip and a slight bruise on his head. He lost two days from work and was treated by a doctor on only two occasions. The evidence amply supports the award made.
For the reasons assigned, the judgment appealed is amended by increasing the award of plaintiff Jewell Wheeler to $491.64 and, as thus amended, is affirmed at appellants' cost.
Amended and affirmed.