LOTTINGER, Judge.
This is an automobile accident case between an ambulance owner, its driver and insurer and a vehicle owned by one plaintiff and operated by the other. The Trial Court found judgment in favor of the plaintiffs and against the defendant without assigning written reasons. Oral reasons however, were given in the transcript of testimony.
On Friday, August 29, 1975, at about 12:00 noon, plaintiff, Rev. Gale Marie Carter, was driving a 1973 Dodge Station Wagon owned by plaintiff, Bert Joseph Carter, Sr., in an easterly direction on Highway 90 East, Brashear Avenue, in Morgan City, Louisiana. Upon reaching the intersection of Brashear Avenue and Fourth Street, she pulled out into the left hand lane or turning lane which was carved out the median on Brashear Avenue and attempted to make a left turn. Traffic was heavy in both directions and traffic going in a westerly direction was virtually at a stand-still. A driver heading west on Brashear Avenue left an opening in the left lane for the Carter vehicle to cross Brashear Avenue and flagged her across. Plaintiff pulled her vehicle into the left lane of the east bound lane of Brashear Avenue, she stopped, she looked down Brashear Avenue and, according to her testimony, the right lane of traffic heading in a westerly direction was clear of traffic past the stop light on Sixth Street. Plaintiff then proceeded across the right lane of traffic to cross Brashear Avenue and continue on Fourth Street.
As plaintiff pulled into the right lane of traffic on Brashear Avenue, at some point she noticed the ambulance had pulled from the left to the right lane of traffic and as she proceeded to cross, suddenly, as if the ambulance driver did not see her, the ambulance began to accelerate at a high rate of speed. All parties agreed that the speed of the ambulance at the accident was approximately 35 miles per hour. The lights and siren on the ambulance did not come on until immediately before the collision.
*1147 The Trial Court found negligence on the part of the plaintiff in attempting to cross the right lane of west bound traffic on Brashear Avenue without clearly being able to determine if any oncoming traffic was in said lane. The Trial Court also held the defendant driver guilty of gross negligence in suddenly pulling from the left lane of traffic into the right lane of traffic, in speeding his vehicle and not noticing the oncoming station wagon. The Court held that the last clear chance was with the ambulance driver and awarded Bert Joseph Carter, Sr. the sum of Two Thousand Seven Hundred and Eighty Six and 42/100 ($2,786.42) Dollars as damages to his 1973 Dodge Station Wagon and Rev. Gale Marie Carter the sum of Fifteen Hundred and no/100 ($1,500.00) Dollars as pain and suffering and the sum of Two Hundred and Six ($206.00) Dollars as medical expenses. All three defendants, namely, Acadian Ambulance Service, Inc., its insurer, United States Fidelity & Guaranty Company and Kim R. Scott, the driver of the ambulance were cast in judgment. The defendants have taken this appeal.
Jonathan Falcon, an unbiased witness testified that the ambulance was stopped directly in front of him and there were some five to six cars on Brashear Avenue between him and the intersection at Fourth Street. There were, therefore, some five or six cars stopped in front of the ambulance. He said that he first saw the station wagon just as it was going through the intersection “. . .at least half of the car was already on Fourth Street.” At the time the ambulance had pulled out to the right lane and was moving without lights or siren. The ambulance put on its flashing lights just a split second before the accident and he doesn’t know if the ambulance driver blew the siren, at least he didn’t hear it.
He said that when the ambulance pulled into the right lane, it sped up pretty quickly going 35 miles per hour at impact, at which time half of the station wagon was already into Fourth Street and the other half in Brashear Avenue. There was about 12' between the rear of the station wagon and the cars waiting in the left lane of Brashear Avenue at the time of the impact. He said that the ambulance had sufficient room to go around the station wagon. He did not see the brake lights of the ambulance go on. He said that the ambulance driver took no evasive action whatsoever, and it looked as though the driver did not even see the station wagon.
Dale Lee Ross, who as the manager of a Doughnut Shop on the corner of Brashear Avenue and Fourth Street said that he was crossing Fourth Street when he heard a siren, looked up and saw the ambulance hit the station wagon. He said the ambulance was going between 30 and 40 miles per hour and it struck the last Vs of the right hand panel of the station wagon, it lifted it about 3 feet off the ground and spun the wagon around and the left rear struck the telephone pole at the intersection. He said that at impact, two-thirds of the station wagon was already into Fourth Street. He also saw no evasive action. He said that he didn’t see the station wagon until he heard the siren at which time was about 50 feet or 60 feet from the vehicles.
The ambulance driver and the medical technician who was riding as his passenger testified that they were stopped in traffic at the corner one block away from Fourth Street. They were heading to Berwick to pick up an injured worker and started off from the ambulance depot under Code One which means to get there as soon as possible. After the heavy traffic had stopped them for some few minutes, they called into the depot to determine what they should do and they were told to go into Code Two which means, lights and siren. They claimed that they looked to the right to see that no cars were coming in the right hand lane and pulled out from the left lane to the right lane and put on the lights and siren. They agreed that at the time of the impact, the speed of the ambulance was some 30 to 35 miles an hour. The technician first looked up when he claims the driver of the ambulance put on his brakes after seeing the station wagon crossing the road.
*1148 In reaching his decision, the Trial Judge said:
“The Court finds from the evidence that the ambulance whose driver and insurance company are made defendant in these proceedings was in this lane of traffic headed westerly with the intention of crossing the bridge. The ambulance was idling somewhere in the block between Fourth and Fifth Streets, possibly a little bit closer to Fifth Street or somewhere near the middle of that block.
“As the plaintiff was awaiting her turn, . and as the traffic was stopped at this particular time and as there appeared to be no traffic in the right-hand lane of Brashear, the driver of the first vehicle who had stopped — the first vehicle headed westerly who had stopped so as not to block the intersection of Fourth — motioned to the plaintiff from his automobile for her to come forward. From her position to move forward and into Brash-ear, it was extremely difficult for her to see traffic from the east headed west. Of course, she could see the lane of traffic stalled, but it was difficult for her to see to her right in the right lane of traffic headed west. In order to do so, she would have to clear the left lane of traffic, at least the area where she was seated or partially cleared, in order to look to her right and see traffic approaching. Under these circumstances she was faced with a very dangerous situation and a situation where ordinance required her to make sure that she could effect the maneuver safely before entering into Brashear. Under these circumstances, the Court would have to find that she was negligent in entering into the right-hand westbound lane on Brashear Avenue.
“After entering this lane, at some point she saw the approaching vehicle and continued and had almost cleared the intersection when struck by the ambulance. From the evidence of the parties, the Court finding the evidence of the plaintiff to be much more convincing than the evidence of the defendant, the Court can only conclude that the driver of the ambulance was guilty of gross negligence. He, himself, stated that he recognized this as a dangerous situation; that when an ambulance siren is sounded, frequently traffic in the left lane will attempt to pull off the right lane. He poses a situation to the Court where he had every reason in the world to be extremely careful before proceeding forward and to be sure that no traffic would pull in front of him in making his maneuver. Despite this, the slow moving vehicle of the plaintiff had ample time to almost completely clear the intersection with the driver of the ambulance accelerating at a rapid rate of speed from some 50, 60 or 70 feet to the east of the intersection. The evidence shown that the driver struck his brakes only at the last possible minute, possibly some ten to twenty feet before hitting the vehicle of the plaintiff. All of the evidence shows that the plaintiff’s vehicle was moving very slowly throughout the maneuver. If we accept the evidence of the driver of the defendant’s vehicle, he saw the other car, according to his testimony in one place, only just before he hit it and another time about two seconds before he hit it. At a speed of 25, 30, 35 miles an hour he would have to travel about 60 or 70 feet in a period of two seconds. The evidence shows that he only traveled from ten to twenty feet after he saw the slow moving vehicle. “Under the circumstances, the Court finds the defendant driver guilty of gross negligence. Under the circumstances, the Court feels, considering all of the evidence adduced herein, that this is a proper case for the application of the last-clear-chance doctrine. Our Courts have enunciated this doctrine in a number of cases. Particularly, the Court refers to Anderson versus James, 234 So. 2nd 238, on Page 239. In this case, the Court did not invoke the doctrine, but they spelled out what the doctrine is. The Court states that, ‘Before this doctrine may be applied, three essential facts must be established:
*1149 “ ‘One, that the injured party was in a position of peril of which he was unaware of or from which he was unable to extricate himself.’
“The Court finds this applicable in this particular case; that the driver of the plaintiff’s vehicle through her negligence had placed herself in a position where she was totally unable to extricate herself or do anything about it.
“ ‘Number Two, that defendant was in a position to see or discover such peril.’ “The Court finds that the defendant driver in a lane of traffic headed west should have been able to — even though there was traffic between him and the crossing car — he should have been able to see the broad side of this vehicle, some 18 to 20 feet long. It should have stuck out like a sore thumb. He, himself, states that he was watching this left lane of traffic very carefully, the Court holds that he should have at the least have seen this automobile and should have taken appropriate measures to avoid a situation which did subsequently arise.
“ ‘Number Three, that at such time the defendant could have with the exercise of reasonable care avoided this accident.’ “The Court holds that this defendant could have and should have avoided this accident at the time when he should have seen this automobile making this maneuver in front of him.”
The Trial Court found the evidence as adduced by the plaintiff to be much more convincing than the evidence of the defendant. We agree with this finding of the Trial Court. The evidence reflects that, as plaintiff neared the scene of the accident, she pulled into the left turn media, stopped and yielded to oncoming traffic, a motorist left an opening for her to cross, she pulled into the left hand lane of the west bound portion of Highway 90 and, again yielding, checked down the right hand lane and noticed nothing and so proceeded to cross the intersection. Suddenly, and without looking or using its emergency signals, the ambulance pulled out and accelerated rapidly and struck the plaintiff’s vehicle.
We believe that not only did the defendant driver have the last clear chance to avoid this accident but we also believe that the doctrine of preemption would prevail to the benefit of plaintiff. In Butler v. O’Neal, 26 So.2d 753, 756 (La.App. 2nd Cir. 1946), the Court said:
“Pre-emption of an intersection, under the principles established by our jurisprudence, does not mean the prior entry of a vehicle simply by a matter of a few feet, or, in relation to the time element, by a fraction of a second ahead of another vehicle, but, in order to support a charge of negligence, such pre-emption must be construed to mean an entry into an intersection with the opportunity of clearing the same without obstruction of the path of another vehicle under normal and reasonable circumstances and conditions.”
The principle has been consistently followed since. See Meek v. State Farm Mutual Automobile Insurance Company, 244 So.2d 661 (La.App. 2nd Cir. 1971) and Moore v. Shreveport Transit Company, 115 So.2d 218 (La.App. 2nd Cir. 1959).
Defendants contend that the Trial Judge misapplied or misinterpreted various facts as presented. We have reviewed these contentions, and in no case do we find that they would have changed the result reached.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court is affirmed; all costs of this appeal to be paid by defendant.
AFFIRMED.