147 So.2d 766 (1962)
Janie S. PATE
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al.
No. 5642.
Court of Appeal of Louisiana, First Circuit.
December 14, 1962.
*767 Maughan & Bankston by Roy Maughan, Baton Rouge, for appellant.
Hynes & Lane by Horace C. Lane, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
LANDRY, Judge.
Plaintiff herein, Janie S. Pate, instituted this action in tort seeking monetary judgment in compensation for personal injuries and property damages allegedly sustained and incurred in an intersectional automobile collision. After two jury trials, (the first of which ended in a mistrial, and the second of which culminated in a general verdict for defendants), judgment was rendered in favor of defendants, Teddy B. Hamilton and State Farm Mutual Automobile Insurance Company, (Hamilton's liability insurer), rejecting and dismissing plaintiff's demand and from said adverse judgment plaintiff has appealed.
The accident giving rise to this litigation occurred in the City of Baton Rouge on March 23, 1960, within the intersection formed by North Seventh Street, (which runs in a northerly-southerly direction and is a one-way street, northbound), and Laurel Street (which runs in an easterly-westerly direction and is a two-way street). Admittedly Laurel Street is the superior thoroughfare. It is conceded that a duly installed "stop sign" requires that all traffic proceeding northerly along North Seventh Street stop and yield the right of way to motorists proceeding upon Laurel Street.
*768 On the date of the accident in question, after dark, plaintiff, a sixty year old widow, was driving her 1957 Ford automobile northerly along North Seventh Street accompanied by her guest-passenger acquaintance, Hilda Maas. As plaintiff approached the intersection with Laurel Street, she stopped in obedience to the stop sign. At the same time defendant, Teddy B. Hamilton, accompanied by his 13 year old sister, Ginger Ann Hamilton, was proceeding easterly upon Laurel Street in his father's 1955 Ford pickup truck approaching the same intersection at an estimated speed of 20 miles per hour. Upon stopping at the intersection plaintiff noted on her left a vehicle parked near the South curb of Laurel Street approximately one car length from the intersection, said vehicle facing easterly with its headlights burning. After concluding that the parked vehicle was either taking on or discharging passengers and would not proceed on the favored street, plaintiff started to cross the intersection at a slow rate of speed. Before plaintiff could traverse the intersection her vehicle was struck on the left front door by the front of defendant's truck. Plaintiff did not see the oncoming truck until her own vehicle was in the intersection. Defendant, traveling within the lawful speed limit, also noted the parked vehicle and swung to his left to pass the stationary automobile and continue along Laurel Street. When defendant reached a point approximately forty feet from the intersection, he observed plaintiff's automobile entering the intersection and immediately applied his brakes. Unfortunately, however, defendant's brakes failed and the collision occurred in the approximate center of Laurel Street.
Plaintiff makes the usual charges of negligence expected under such circumstances, namely, inter alia, excessive speed, failure to maintain proper lookout, failure to maintain control, preemption of the intersection, failure to take evasive action to avoid the collision and, alternatively, last clear chance. In addition, plaintiff charges that defendant was driving at night without headlights, driving with defective brakes which defendant either knew or should have known were defective and finally, passing a vehicle in an intersection.
Conversely, defendants alleged plaintiff was solely responsible for the accident in that plaintiff failed to yield the right of way to which defendant was entitled and proceeded into the intersection of a favored roadway when it was manifestly unsafe for plaintiff to do so. Alternatively, defendants maintain that plaintiff was contributorily negligent in the aforesaid respects.
On appeal, plaintiff contends the jury erred in failing to find defendant guilty of negligence constituting a proximate cause of the accident in one or more of the respects charged and also complains of error on the part of the trial court in permitting the introduction of testimony of an expert witness to explain that the function of modern emergency brakes is merely that of a parking brake when the statutory law of this state requires that vehicles be equipped with emergency brakes capable of stopping an automobile if its foot brakes fail.
The evidence reveals that defendant had entered Laurel Street from North Sixth Street (which lies one block west of North Seventh Street), after picking up his young sister, Ginger Ann, at a dancing school located in the block of North Sixth Street immediately north of Laurel. After turning off North Sixth onto Laurel defendant proceeded easterly along Laurel in second gear, traveling at an estimated speed of 20 miles per hour. As he neared the intersection of North Seventh, he observed the vehicle parked near the intersection on his right and swung to his left to continue along Laurel Street. When he reached a point approximately 40 feet from the intersection he noted plaintiff's vehicle proceeding across the intersection and immediately attempted to apply his brakes. His left rear brake-fluid line ruptured, however, causing the fluid to escape and rendering his brakes completely inoperable. It is undisputed that the brake fluid left a trail approximately 23 *769 feet in length immediately preceding the point of impact.
The record is devoid of any evidence tending to establish that defendant was proceeding at an excessive rate of speed. Neither does the record establish, as contended by plaintiff, that defendant was passing another vehicle in an intersection. In this regard plaintiff's own testimony shows that she stopped at the stop sign and noting the presence of the parked car to her left, waited to see whether said parked vehicle would proceed. Plaintiff conceded that she waited a longer than normal time to ascertain what the stationary vehicle would do and that she did not start forward until she made sure the parked vehicle would not proceed across the intersection. She further acknowledges that at the time she started forward she was totally unaware of the presence of the oncoming pick-up truck. Under such circumstances defendant was not guilty of passing another vehicle in an intersection. The vehicle in question was neither in the intersection nor was it in motion. According to plaintiff's own testimony, the vehicle was parked near the south curb approximately one car length west of the intersection. There is nothing in the record to indicate that oncoming traffic (westbound on Laurel) dictated that defendant should stop behind the vehicle parked at or near the curb. In this regard Hamilton's testimony (which is undisputed by defendant) is to the effect that there was no oncoming traffic at the time and that his maneuver in going around the parked vehicle did not in any manner interfere with the movement of any other vehicle proceeding along Laurel Street.
While we have no way of determining the precise basis of the jury's verdict for defendants, it is clear that the jury concluded either that defendant Hamilton was free of negligence or that plaintiff was contributorily negligent as alleged by defendants.
As we view the record before us, the only serious issue presented by this appeal is whether defendant Hamilton was negligent in driving at night without lights. Needless to say, the evidence is conflicting as to this vital issue.
Plaintiff maintains that she did not see defendant's vehicle because it was proceeding without lights. The contention, however, is not supported by a preponderance of the evidence of record. On the contrary, we find the evidence preponderates in favor of the conclusion that defendant Hamilton did in fact have his lights on at the time of the accident.
Defendant, Teddy Hamilton, testified that the dancing school attended by his young sister, Ginger Ann, was situated on North Sixth Street around the corner and approximately one and one-half blocks distant from the scene of the accident. When he came to pick up his sister, defendant parked his truck in a nearby parking lot, walked to the building in which the dancing lessons were being given, entered the building and waited therein for the class to conclude. He left the building in the company of his said sister and one Sherry Bailey (also a dance student) and also Sherry's mother, Mrs. T. V. Bailey, who had come to pick up her daughter. The four persons conversed as they left the building and also chatted briefly on the sidewalk. Mrs. Bailey and her daughter then walked to their nearby automobile and defendant, Teddy Hamilton, and Ginger Ann proceeded to the truck parked nearby. Upon entering his truck defendant started the motor, turned on the lights, backed the truck so that he could turn around and leave the parking lot. He immediately entered North Sixth Street and proceeded southerly to the corner of Laurel Street where he turned left and continued along Laurel Street until the accident occurred. Hamilton was positive he turned his lights on before backing the truck in the process of turning to enter North Sixth Street. It is conceded, however, that following the accident the lights of the truck were not burning and that the switch was in the "off" position. It further appears that the light switch operated on the pushpull principle in that to turn the lights on *770 the switch is pulled outward from the dashboard and to extinguish the lights the switch is pushed in. Defendant Hamilton explained that the force of the impact resulting from the collision threw him forward against the dashboard in such manner that his left knee struck the light switch pushing it toward the dash and to the "off" position and that simultaneously his right knee struck the choke button with such force as to bend the latter mechanism.
In essence, the testimony of Ginger Ann Hamilton corroborates that of her brother Teddy. She testified unequivocally that Teddy turned on the truck's lights before backing the vehicle preparatory to driving onto North Sixth Street. In this regard she recalled that when she entered the truck it was facing the side of a brick building and when the lights were turned on she noted its lights shining on the side of the building as her brother backed away.
Sherry Bailey testified that after chatting briefly with Teddy and Ginger Ann outside the dancing school, she and her mother walked to their nearby vehicle and proceeded to leave. When her mother stopped in compliance with a stop sign before turning left on Laurel Street, Sherry noted the lights of the truck behind the car in which she was riding and, as was her custom, she turned and waved to Ginger Ann. In this connection the record shows that Sherry and Ginger Ann had been taking dancing lessons together at least twice weekly for two or three years. Sherry testified positively and unequivocally that when she turned to wave to her acquaintance, Ginger Ann, the lights of the truck were burning.
Mrs. Bailey corroborated the testimony of her daughter, Sherry, in that she stated she observed Sherry turn and wave to Ginger Ann whereupon she looked in her rear view mirror and observed the lights of the truck behind her. She preceded the truck across the intersection of North Seventh Street without incident and continued on her way unaware that her acquaintances were involved in the accident.
Ward L. Barbay of the Baton Rouge Police Department, testified that he investigated the accident in his official capacity as patrolman. With respect to the lights of the truck he testified unequivocally that no one reported to him that the truck was traveling without lights, that his report of the accident revealed no such complaint and that if such a serious charge had been made by any interested party he would have recorded such information.
Plaintiff testified, in substance, that she did not see the truck until she had entered the intersection. She further conceded that the lights of the parked vehicle were shining directly in her eyes while she waited to determine whether said vehicle would proceed across the intersection and that the lights of said vehicle impaired her vision to a considerable degree. In effect plaintiff testified that she did not see the lights of the truck and did not believe that the truck's lights were burning.
Hilda Maas, plaintiff's guest passenger, corroborated plaintiff's testimony regarding the presence of the vehicle parked near the intersection with its lights burning. She did not, however, see defendant's truck at any time and was unable to describe any of the circumstances attending the accident.
Lonnie Humphries (who was not acquainted with any of the litigants) testified that he was a passenger in a vehicle which was entering Laurel from the driveway of premises situated on the north side of Laurel Street about 100 feet west of the scene of the accident. Humphries' host driver waited for defendant's truck to pass and then entered Laurel Street behind defendant's vehicle. The sum and substance of Humphries' testimony is that he does not recall seeing any lights on the truck as it passed. While he was reluctant to state positively that there were in fact no lights burning on the truck he was equally certain that he did not observe any lights on defendant's pick-up truck. He examined the truck following the collision and found that the truck's lights were not burning. He likewise *771 noted that the switch was in the "off" position.
We believe the evidence preponderates in favor of the conclusion that the lights on the truck were burning at the time of the accident and so find.
Considering the record in its entirety we conclude that the proximate cause of the accident was the negligence of plaintiff in attempting to negotiate the intersection when defendant's truck, traveling on the favored thoroughfare, was so near as to make such maneuver patently dangerous. The fact that plaintiff stopped in obedience to the stop sign does not exonerate her from negligence. Stopping for a stop sign discharges only a portion of the duty imposed upon a motorist; in addition to stopping he must look and yield the right of way to all vehicles proceeding lawfully upon the favored roadway. Briley v. Jones, La.App., 63 So. 2d 176; McMorris v. Webb, La.App., 67 So.2d 146. The fact that plaintiff did not observe defendant's oncoming vehicle is of no moment. Plaintiff is charged with the duty of seeing what, in the exercise of reasonable care, she could and should have seen. We are impelled to conclude that the lights of the parked vehicle contributed greatly to the occurrence of this accident. Plaintiff was admittedly blinded by the lights of the parked automobile and by her own testimony waited at the stop sign a longer than normal interval in an attempt to make certain that the parked vehicle would not proceed. It appears that plaintiff's attention was directed primarily toward this parked vehicle whose lights impeded her vision and this factor, undoubtedly, was largely responsible for her failure to note the approach of defendant's truck.
Assuming, therefore, solely for the sake of argument, defendant was negligent, it is clear beyond all doubt that plaintiff was guilty of contributory negligence which consisted of her failure to see defendant's approaching vehicle and her attempt to cross the intersection of the favored roadway when the oncoming truck was so near that she could not do so in reasonable safety without impeding the normal and lawful progress of the motorist traveling upon the superior street. Unhappily for plaintiff, her aforesaid negligence bars her recovery herein.
Plaintiff's alternative plea of last clear chance is based on the initial failure of defendant to stop the truck because of the alleged defect in its primary braking system, failure of defendant to apply his emergency brake when the primary braking system became inoperable and failure of defendant to swerve his truck or take other evasive measures to avert a collision.
In Gage v. Nesser, La.App., 119 So.2d 98, we find the doctrine of last clear chance clearly and succinctly explained as follows:
"* * * Briefly stated, the doctrine of last clear chance holds that when the negligence of a person places him in a position of danger or peril of which he is unaware or from which he cannot extricate himself, even though his negligence continues to the moment of injury, he may, nevertheless, recover from a defendant who either discovered or, by the exercise of ordinary care, should have discovered plaintiff's peril in time to avoid the injury by the exercise of reasonable prudence and care. The cases so holding are legion and no citation of specific authority in support thereof is considered necessary.
"In accordance with the prevailing rule our jurisprudence holds to the effect that a person discovering another in a position of peril is under a duty to save the latter from injury by the use of ordinary and reasonable care but is only held to that degree of care which should be exercised by a reasonably prudent individual under the circumstances and not to unerring judgment which will prevent injury under any circumstances whatsoever. Myers v. Maricelli, La.App., 50 So.2d 312; Litton v. Samuel, La.App., 98 So.2d 534."
*772 We also quote with approval the following language appearing in Lavigne v. Southern Farm Bureau Casualty Ins. Co., La.App., 125 So.2d 430.
"* * * For the successful invocation of the doctrine of last clear chance, the existence or presence of three essential elements must be established: First, that the other person was in a position of peril of which he was unaware or from which he was unable to extricate himself; second, that the person against whom such doctrine is charged actually discovered or was in a position where he should have and could have discovered such other person's peril; and, third, that at the time the person charged with responsibility could have, with the exercise of reasonable care, avoided the accident. Russo v. Texas & Pacific R. Co., 1938, 189 La. 1042, 181 So. 485; Newton v. Pacillo, La. App.1959, 111 So.2d 895; Moore v. Shreveport Transit Co., La.App. 1959, 115 So.2d 218."
It is established jurisprudence in this state that a plaintiff relying upon the doctrine of last clear chance has the burden of proving all facts and circumstances essential to its application. Phares v. Biggs, La.App., 135 So.2d 507.
One of the essential elements of the last clear chance doctrine is that the defendant have both opportunity and means of averting the accident through the exercise of ordinary reasonable care.
In the case at bar defendant had neither opportunity nor means of averting the collision after plaintiff drove into the intersection when defendant's truck was only some 40 feet distant therefrom. Defendant reacted as a normal driver and applied his brakes which, until that moment, had functioned properly. When the primary brakes on the truck failed there was nothing defendant could do to avoid a collision with plaintiff's vehicle. Application of his emergency brake could not have been accomplished in time to stop the truck. The short distance intervening between the vehicles did not permit sufficient room or opportunity for defendant to swerve his vehicle. Assuming defendant's primary braking system had functioned properly, we think it extremely doubtful that defendant's truck would have been brought to a halt in sufficient time to avoid all contact with plaintiff's vehicle. Had defendant's foot brake held, the truck traveling at approximately 20 miles per hour could hardly have been brought to a complete stop in the distance separating the vehicles. While the impact between the vehicles would undoubtedly have been of less severity had defendant's primary brakes held, we believe, nevertheless, a collision between the vehicles was inevitable.
Assuming, arguendo, the trial court erred in permitting an expert witness to testify that the purpose of modern emergency brakes on automobiles is simply to provide a parking brake notwithstanding our statutory law requiring that all motor vehicles be equipped with emergency brakes capable of stopping the vehicle should the primary braking system fail, such error was inconsequential in that it did not prejudice plaintiff's cause in any respect whatsoever. Granting, for argument's sake, defendant was required to have his vehicle equipped with dual braking mechanisms each capable of stopping the vehicle, failure to comply with the statute was not a proximate cause of the accident which gave rise to the present litigation. Had defendant's vehicle been thusly equipped, he could not, under the circumstances shown, have effectively activated and operated an alternate braking mechanism in time to avoid a collision. The distance separating the vehicles at the instant defendant applied his brakes was so short, and the time lapse between the failure of defendant's primary brakes and the occurrence of the impact so brief and fleeting that, had defendant's automobile been equipped with emergency brakes capable of stopping the truck with the same proficiency as properly functioning *773 primary brakes, defendant could not have applied such emergency brakes in time to prevent the accident.
Judgment affirmed.
Affirmed.