SAMUEL, Judge.
Plaintiff, individually and as natural tu-trix of her minor child, John R. Boteler, filed this action for damages resulting from personal injuries sustained by the boy when he was struck by an automobile. The sole defendant, The Travelers Indemnity Company, liability insurer of the vehicle, answered denying negligence on the part of its insured and alternatively pleading contributory negligence on the part of young Boteler. After trial there was judgment in favor of plaintiff in the total sum of $6,462.32. Defendant has appealed.
The accident occurred on Louisiana State Highway 37, better known as St. Bernard Highway, at its intersection with Jacob Drive at approximately 7 p. m. on January 2, 1964. It was dark; and other than headlights from passing vehicles, the only light in the area was in a trailer park just north of the intersection. At the point of the accident the highway consists of two lanes, one reserved for traffic traveling south, or downriver, away from the City of New Orleans and one for traffic traveling north, or upriver toward that city. Boteler, at that time a senior in high school, together with one or two other passengers, had been discharged from a bus which was traveling south on the highway. He alighted on the west or river side shoulder of the road and was attempting to cross the highway when he was struck by the defendant vehicle. That vehicle was traveling in the east side or northbound traffic lane of the highway and was driven by Mrs. Marion Walton. Her husband and son were passengers therein.
*91 A total of six factual witnesses testified at the trial. Young Boteler, Mr. Sadao Yamagucha, who had alighted from the bus at the same time as Boteler, and Mrs. Mitzie Hano, Yamagucha’s sister, who had driven to the intersection to meet her brother, were plaintiff witnesses. Mr. and Mrs. Walton and their son testified for the defendant. The testimony is conflicting in some respects.
Young Boteler testified: He was returning from his parttime job in New Orleans to his home on Jacob Drive on the east side of the highway. With two other passengers he got off the bus on the west or river side of the highway at Jacob Drive. It was completely dark and he was wearing a light green or blue sweater, brown corduroy shirt and blue denim, pants. He waited on the shoulder until three cars traveling behind the bus had passed. When the last car was approximately two and one-half car lengths away, and after looking in both directions for approaching traffic, he started to cross the highway. The southbound traffic lane, in which the bus was traveling, was clear and he was looking primarily in the northbound lane. But his vision was limited because the road curved about a block away to the south or downriver. In that direction he could see farther in the southbound traffic lane than he could in the northbound lane. He did see the reflection of headlights two or three blocks downriver, but they were far enough away to cross in safety. Yamagucha also proceeded to cross just behind him. Before he had reached the center of the highway, but after he had crossed one-half to three-quarters of the southbound lane, the defendant vehicle struck him. He did not see that vehicle at any time before the impact.
The testimony of Mr. Yamagucha was as follows: He got off the bus at the same time as young Boteler and only those two passengers disembarked at that stop. After looking to the left and right and seeing no approaching vehicles, they started to cross the highway as the bus was leaving and when the rear end of the bus was about 10 or 15 feet away from them. Because his view was blocked by the bus, he saw the defendant vehicle for the first time when it was only 4 to 5 feet away, just before it struck young Boteler. At the moment Boteler was hit this witness was a “couple” steps behind him, to his right and Yamagu-cha himself was in the middle of the highway. He thought the car was traveling at a high speed, more than the legal limit. After Boteler was hit the vehicle crossed the highway and stopped on the opposite side about 20 feet away. The impact threw the boy to the highway a distance of about 10 to 15 feet away from the place where he was struck. He noticed that the defendant vehicle’s headlights were on but he did not hear any application of its brakes.
Mrs. Hano testified: She was driving the first car following the bus intending to pick up her brother, Yamagucha, after he disembarked. When the bus stopped she saw her brother get off with another person; and after the bus started to pull away she made a left turn into Jacob Drive, parking her car about 15 feet from the highway, so that she faced away from the highway, to wait for her brother. In her rear view mirror she saw the two boys coming and then heard brakes being applied. She did not see the impact; and the last time she saw them before the impact the two boys were almost in the center of the highway. Apparently after getting out of her car, she saw the defendant vehicle being driven off the highway and into the trailer court; but she did not see where that vehicle came to a stop following the impact, if in fact it did stop before entering the trailer court. ,
Mrs. Walton was driving the defendant vehicle, a station wagon; Mr. Walton was in the front seat to the driver’s right; and their son, Charles, was sitting in the middle of the back seat resting his arms on the back of the front seat. These three defense witnesses testified: They had been traveling at a speed of about 35 miles per hour or less and the legal speed limit in the area was 45 miles per hour. The bus, which *92 was stopped in the opposite traffic lane as they approached it, started to pull away just before they reached that vehicle. When they first saw young Boteler, who apparently came from behind the bus, he had crossed the center of the highway and was only about one or two car lengths away from their vehicle in their lane of travel. The boy attempted to go back in the same direction from which he had come. Mrs. Walton applied her brakes immediately upon seeing the boy but it was then too late to avoid striking him. Following the impact their vehicle traveled only a short distance, approximately several car lengths, and came to a stop in the northbound traffic lane, the lane in which it had been traveling. Shortly thereafter it was moved to the opposite side of the highway into the trailer court. Mr. and Mrs. Walton also testified that several teenage boys had run across the highway from their right to their left, i. e., from the east or lake side to the west or river side, just before the accident and Mrs. Walton had slowed her speed to allow those boys to cross. Charles Walton made no mention of these boys in his testimony, nor was he questioned regarding the incident.
In this court defendant contends the accident was caused solely and proximately, or at least contributorily, by the negligence of young Boteler. Plaintiff contends the sole proximate cause of the accident was the negligence of the defendant driver and, alternatively, in the event contributory negligence is found on the part of young Boteler, she invokes the dcjctrine of last clear chance. We deem it proper to consider first the questions of contributory negligence and last cleár chance. If young Boteler was guilty of negligence which was a proximate cause of the accident, and if the doctrine of last clear chance is not here applicable, plaintiff cannot recover regardless of whether or not there was negligence on the part of the defendant’s driver.
In our opinion the record fails to establish that Mrs. Walton was driving at an excessive rate of speed under the circumstances. The only evidence relative to that speed is the testimony of the three defense witnesses and one plaintiff witness, Mr. Yamagucha. All of the former testified the speed of their vehicle was approximately 35 miles per hour, which we consider reasonable, and the car stopped in its lane after traveling only several car lengths following the impact. Yamagucha, a completely disinterested witness, thought the vehicle was traveling at a high speed and more than the legal speed limit. However, according to his own testimony, he saw the car for the first time when it was only 4 or 5 feet away from him, he had never driven an automobile prior to the time the accident occurred, and there is nothing in the record showing he knew the legal speed limit. Under these circumstances, especially in view of the fact that he observed the vehicle only momentarily, we do not believe he was capable of making a dependable estimate of its speed. Nor does his testimony relative to the vehicle’s stopping distance after the impact constitute proof of excessive speed. Although he did testify the car crossed the highway before coming to a stop, he also stated it came to a stop about 20 feet, and less than 25 feet, from the point of impact. His testimony on this question was as follows:
“Q Mr. Yamagucha, how far from the point where the car hit the boy did the car stop?
A I think more than 20 feet.
Q More than 20 feet?
A Yes, more than 20 feet.
Q About 25 feet?
A 20 feet.
Q 20 feet?
A I think, about.”
We are satisfied that, even basing our conclusion solely on some of his own testi *93 mony and on the testimony of his witnesses, young Boteler was guilty of negligence which was a proximate cause of the accident. His testimony that, before proceeding to cross the highway, he waited on the shoulder until three cars traveling behind the bus had passed and that he was struck while in the southbound lane after he had crossed only one-half or three-quarters of that lane is contradicted by all other testimony on the point and particularly by the testimony of his own witnesses.
All six of the factual witnesses gave testimony relative to the question of whether he started to cross just after the bus passed or after cars traveling behind the bus had passed. The Waltons testified he must have come from behind the bus just as the bus was pulling away. His witness, Yama-gucha, testified he and young Boteler started to cross the highway just as the bus was leaving and when the rear end of the bus was only about 10 or 15 feet away from them. His other witness, Mrs. Hano, testified she was driving the first car following the bus and made a left turn into Jacob Drive after the bus started to pull away, so that, from her testimony, it appears unlikely there were any other cars behind the bus, and previously behind Mrs. Hano’s vehicle, requiring that the boys delay their attempt to cross until those cars had passed.
Five witnesses, young Boteler, Yama-gucha and the three Waltons, testified relative to the traffic lane in which the impact occurred. The Waltons and one plaintiff witness, Yamagucha, testified it occurred in the northbound lane, the lane in which the defendant vehicle was traveling. Yamagucha’s testimony leaves no doubt about this fact. According to him, at the moment of impact he was in the middle of the highway a “couple” steps behind Boteler who was to his left. This places Boteler in the northbound lane when he was hit. And as the defendant vehicle was approaching from their right, if that vehicle had been in the southbound lane it would have hit Yamagucha in addition to, or instead of, Boteler. We have already noted that Boteler himself testified Yama-gucha was crossing the highway just behind him.
Young Boteler lived on Jacob Drive and certainly knew the area. Yet, despite the darkness (a hazard increased by the dark clothing he was wearing) he walked from close behind a bus which, in addition to the curve in the highway, prevented him from seeing approaching traffic in the opposite or northbound lane and which likewise prevented the defendant’s driver from seeing him, and proceeded across the highway into the northbound lane without seeing the defendant vehicle until the moment of impact. This constitutes negligence, even gross negligence. Derby v. Redmann, La.App., 180 So.2d 229; Moses v. Sanders, La.App., 164 So.2d 177; Soileau v. New Hampshire Insurance Company, La.App., 160 So.2d 793; Moore v. American Insurance Co. of Newark, N. J., La.App., 150 So. 2d 346; Fontenot v. Travelers Indemnity Company, La.App., 134 So.2d 330; Thompson v. Dyer, La.App., 1 So.2d 433; Owens v. Tisdale, La.App., 153 So. 564.
We also conclude the doctrine of last clear chance is inapplicable. What this court said regarding that doctrine in Scott v. Glazer, 164 So.2d 185, 187, is pertinent:
“A litigant relying upon the doctrine of last clear chance has the burden of proving all facts and circumstances essential to its application. Pate v. State Farm Mutual Automobile Ins. Co., La.App., 147 So.2d 766; Phares v. Biggs, La.App., 135 So.2d 507; Fontenot v. Travelers Indemnity Company, La.App., 134 So.2d 330; Lawrence v. Core, La.App., 132 So.2d 82; Franicevich v. Lirette, 241 La. 466, 129 So.2d 740. Before the doctrine can be successfully invoked three essential facts must be established: (1) that the person invoking the doctrine was in a position of peril of which he was unaware or from which he was unable to extricate *94 himself; (2) that' the person against whom the doctrine is invoked actually discovered or was in a position where he could and should have discovered such other person’s peril; and (3) that at such time the person against whom the doctrine is invoked could have avoided the accident with the exercise of reasonable care. Sonnier v. Great American Insurance Company, La.App., 134 So.2d 363; Lavigne v. Southern Farm Bureau Casualty Ins. Co., La.App., 125 So.2d 430; Clark v. Shannon, La.App., 120 So.2d 307; Wells v. Meshell, La.App., 115 So. 2d 648; Moore v. Shreveport Transit Company, La.App., 115 So.2d 218; Newton v. Pacillo, La.App., 111 So.2d 895.”
In the instant case young Boteler was not in a position of peril until such time as he left the shoulder and walked from behind the bus into the path of the approaching defendant vehicle. Nor has plaintiff established that the defendant driver had the means of avoiding the accident by the exercise of reasonable care after she was in a position where she could and should have discovered young Boteler’s peril. Indeed, we are satisfied from our reading of the entire record that at the time she could have discovered the boy’s peril there was insufficient time to do anything except apply her brakes, an action which she did take. One of the three facts essential to the doctrine of last clear chance being absent, plaintiff cannot successfully invoke that doctrine. Franicevich v. Lirette, 241 La. 466, 129 So.2d 740; Sorrell v. Allstate Insurance Company, La.App., 179 So.2d 499; Soileau v. New Hampshire Insurance Company, supra; Coleman v. Mason, La.App., 174 So.2d 655; Jones v. Dozier, La.App., 160 So.2d 395; Campisi v. Fidelity and Casualty Co. of New York, La.App., 152 So.2d 88; Pate v. State Farm Mutual Automobile Insurance Co., La.App., 147 So.2d 766; Lawrence v. Core, La.App., 132 So.2d 82.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered, adjudged and decreed that there be judgment in favor of the defendant, The Travelers Indemnity Company, and against the plaintiff, Mrs. Hazel D. Burkhardt, wife of Frank P. Delgado, individually and in her capacity as natural tutrix for the use of her minor child, John R. Boteler, dismissing said plaintiff’s suit; all costs in both courts to be paid by plaintiff-appellee.
Reversed.