HOOD, Judge.
The plaintiff, Freda Johnson Thomas, seeks damages for the death of her 14-year-old son, August G. Thomas, Jr., who was struck and killed by an automobile being driven by the defendant, Lawrence T. Dispenza. Judgment was rendered by *388 the trial court in favor of the plaintiff, and defendant has appealed.
The trial judge concluded that both the defendant and the decedent were negligent, but that plaintiff was entitled to recover from defendant under the doctrine of last clear chance. The substantial issue presented on this appeal is whether the trial judge erred in holding that the defendant had the last clear chance to avoid the accident.
Counsel for both parties agree that the facts are substantially as set forth in the written reasons for judgment assigned by the trial judge, as follows:
“The date of the accident was August 8, 1966 at a time between 1:30 and 2:00 o’clock in the afternoon. The accident occurred on a bridge on Louisiana High way No. 13 which crosses Bayou Pla-quemines, north of Crowley in Acadia Parish, Louisiana. The decedent was a pedestrian and was struck by a 1963 Rambler automobile which was owned and being driven by the defendant Lawrence T. Dispenza.
“The referred-to bridge is 477 ft. from end to end and runs north and south and Highway No. 13 leading to said, bridge from both directions is straight and clear for quite some distance. The bridge is a two-lane concrete structure with a ledge approximately 10 inches high on each side of the bridge, and on the outside of the ledge, there exists a metal railing. The concrete ledge referred to is only a few inches across the top and is obviously too narrow to be used as a walk-way, consequently any pedestrian seeking to cross said bridge must use the highway itself for passage across. The accident, which will be described hereinafter, occurred when the decedent, who was jogging across the bridge in a northerly direction, was struck by the defendant’s vehicle, which was likewise traveling in a northerly direction. * * *
“On the afternoon in question, the decedent was fishing in Bayou Plaque-mines near the south end of the above referred-to bridge in the early afternoon with a companion, Daniel ‘Gunu’ Co1 meaux, the latter being a grown man of 58 years. It was decided that they would cross the bridge to the north side and attempt fishing on that side. The decedent, who was, as aforementioned, 14 years of age and who was approximately five ft. six inches (5' 6") in height and weighed approximately 135 pounds commenced to cross the bridge on the east side along side the aforementioned ledge. He was jogging along and carried a fishing pole in his right hand and some bait in his left hand. His companion Daniel Comeaux likewise was crossing the bridge, however he was on the west side of the bridge and behind the decedent. The defendant Dispenza was approaching the bridge from the south, facing north, that is facing the rear of the decedent and the defendant saw the decedent on the bridge prior to the time that defendant’s car got to the bridge. The Court concludes that defendant was traveling between 40 and 45 miles per hour as he got onto the bridge. The defendant indicated that he slowed down some and veered over towards the center line to give the decedent a wider area of travel. According to the witness Schultz, who was driving his vehicle behind the defendant, defendant was traveling approximately 40 miles per hour and testified that as the defendant got onto the bridge, it appeared that he was maintaining the same speed. As these incidents were occurring, another car, unknown, was traveling south and was at or near the north end of the bridge. The evidence indicates that as the defendant approached the decedent, the decedent darted out obliquely in front of defendant’s vehicle, causing decedent to be struck. According to the testimony of the state trooper who investigated the accident, the point of impact was approximately six feet from the east side of the bridge, in the north-bound lane of traffic. He further *389 testified that according to his findings, the left wheels of the defendant’s vehicle were in the north lane of travel and had not gone over the center line at the point of impact. The defendant’s vehicle trav-elled 54 feet from the point of impact; it was 63 feet from the point of impact to the pool of blood where the decedent came to rest. As indicated hereinabove, the point of impact was 138 feet from the north end of the bridge and the decedent consequently had, as aforementioned, covered substantially more than one-half the distance of the bridge.
“The speed limit at the site of the accident was 60 miles per hour, * * *”
Under these facts the trial judge concluded that the defendant, Dispenza, was negligent in failing to reduce the speed of his car as he approached and attempted to pass young Thomas on the bridge, and that his negligence was a proximate cause of the accident. We entertain serious doubts that the defendant was negligent, but we have decided to pretermit a determination of that issue because we have concluded that, in any event, plaintiff is not entitled to recover under the last clear chance doctrine and she is barred from recovery by the decedent’s contributory negligence.
The trial judge also found that the decedent, Thomas, was negligent “in turning diagonally to his left in front of the path of the oncoming defendant’s vehicle,” and that his negligence in that respect was a proximate cause of the accident. We agree with the trial judge in that conclusion. This contributory negligence on the part of the decedent prevents plaintiff from recovering, therefore, unless it is shown that the defendant actually had the last clear chance to avoid the accident.
In order for the doctrine of last clear chance to be applied, the plaintiff must prove three essential facts: (1) That the plaintiff was in a position of peril of which he was unaware or from which he could not extricate himself; (2) that the defendant actually discovered or should have discovered plaintiff’s peril; and (3) that after the defendant actually discovered or should have discovered plaintiff’s peril, he had a reasonable opportunity to avoid the accident. Sales v. Guillory, 188 So.2d 429 (La.App.3d Cir.1966); Williamson v. Aetna Insurance Company, 195 So. 2d 763 (La.App.1st Cir.1967, writ refused).
In the instant suit the trial judge held that young Thomas was in a position of peril as he was jogging across the bridge even before he turned sharply to his left in front of the car. In reaching that conclusion the judge considered the fact that the railing on the bridge “prevented decedent from getting off of the travelled portion of the bridge,” that the decedent was unaware of defendant’s car approaching from the rear, that another car was approaching also from the opposite direction, that young Thomas could have fainted, slipped or tripped or that “he could have turned and the pole or the bait could have struck defendant’s car.”
The evidence shows that immediately before the accident occurred the decedent was jogging along the extreme eastern side of the bridge, and that he actually was within 12 inches of the east railing. Dis-penza saw him before his car reached the bridge, but there was ample room for the automobile to pass without endangering the boy. The automobile, in fact, was six feet from the railing of the bridge when the accident occurred. If the decedent had continued to jog along the east side of the bridge as he had been doing, or if he simply had not turned to his left in front of the car there would have been no accident. There was nothing in his actions or appearance which should have indicated to defendant that the boy might suddenly turn to his left in front of the automobile.
We think it is immaterial that a railing prevented young Thomas from getting off the travelled portion of the bridge, because there was no occasion at any time for him to go over the side of that structure or to even consider doing so. The fact that another car was approaching from the oppo *390 site direction did not cause the decedent to be placed in a position of peril. He was facing that automobile as he jogged along the bridge, and if the car was close enough to have any bearing on the case then it should have served to warn the decedent that he could not safely cross to the other side of the highway at the time he darted in front of the Dispenza car. The evidence shows that the car which was approaching from the north did not prevent defendant from giving the decedent plenty of room for him to remain on the bridge in safety. We do not think the decedent was in a position of peril simply because he could have fainted, slipped, tripped or turned so that his fishing pole or bait might have struck the car.
In Sales v. Guillory, supra, where a similar issue was.presented, we held:
“* * * Under these facts, the decedent was not in a position of imminent peril until such time as he turned and stepped into the path of Guillory’s car. At this moment, Guillory did not have a reasonable opportunity to avoid the accident.”
And in Delgado v. Travelers Indemnity Company, 200 So.2d 89 (La.App. 4th Cir. 1967), our brothers of the Fourth Circuit Court of Appeal said:
“In the instant case young Boteler was not in a position of peril until such time as he left the shoulder and walked from behind the bus into the path of the approaching defendant vehicle.”
Similar rulings were made in Williamson v. Aetna Insurance Company, supra; McCartney v. Allstate Insurance Company, 197 So.2d 390 (La.App.2d Cir.1967); and Bridges v. Insurance Company of North America, 199 So.2d 395 (La.App. 1st Cir. 1967).
Our conclusion is that young Thomas was not in a position of peril until the moment he turned to his left and started to run in front of defendant’s oncoming car. Prior to that time he was in a position of safety. The trial judge erred, we think, in finding that the decedent was in a position of peril before this sudden turn was made.
The evidence establishes that the decedent darted to his left in front of defendant’s approaching car when the front of the car was almost even with him. Dis-penza testified that “just as I got to him he darted to the left and it just happened very quickly.” The driver of the automobile which was following defendant stated that the decedent made only “a step and a half” after he turned before he was struck by the car. The defendant actually saw the boy turn to his left and dart in front of the automobile. He discovered the decedent’s peril, therefore, as soon as it became possible for him to do so. After this discovery was made, however, it was impossible for defendant to avoid an accident.
We conclude that the defendant did not have a reasonable opportunity to avoid an accident after he discovered or should have discovered plaintiff’s position of peril. The evidence, therefore, fails to establish the third element of proof required for the application of the doctrine of last clear chance.
Plaintiff argues on this appeal that the defendant was negligent in failing to sound his horn before he started to pass the decedent. It is unnecessary for us to consider this argument, because even if it should be assumed that the defendant was negligent in that respect we have already pointed out that the decedent also was negligent, barring recovery in this case, and plaintiff has failed to establish facts which would entitle her to recover under the doctrine of last clear chance.
For the reasons herein set out, the judgment appealed from is reversed, and judgment is hereby rendered in favor of defendant and against plaintiff, rejecting plaintiff’s demands and dismissing the suit at her costs. The costs of this appeal are assessed to plaintiff-appellee.
Reversed.
*391 CULPEPPER, J., dissents and assigns written reasons.
TATE, J., dissents and adopts Judge CULPEPPER’S reasons.