174 So.2d 865 (1965)
Henry SANFORD, Sr., Ind., etc., Plaintiff-Appellant,
v.
N. T. THOMPSON, Jr., et al., Defendant-Appellee.
No. 6376.
Court of Appeal of Louisiana, First Circuit.
April 12, 1965.
Rehearing Denied May 24, 1965.
Writ Refused July 2, 1965.
*866 Edward N. Engolio, Plaquemine, Benton & Moseley, Baton Rouge, for appellant.
John S. White, Jr., of Kennon, White & Odom, Hebert, Glusman & Moss, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
BAILES, Judge.
The plaintiff, Henry Sanford, Sr., individually and for and on behalf of his minor son, Henry Sanford, Jr., brought this suit against N. T. Thompson, Jr., Mrs. Delia Thompson and Maryland Casualty Company, to recover damages, both general and special, allegedly due plaintiff as a result of an accident involving defendant Thompson's vehicle, driven by his minor son, Royce Nelson Thompson, and a bicycle being ridden by plaintiff's said minor son. After trial in the district court, the demands of the plaintiff were rejected. Plaintiff appeals.
The accident that gave rise to this action occurred in the early afternoon of Good Friday, April 12, 1963, at the intersection of Alaska Street and West Roosevelt Street in the city of Baton Rouge. The driver of defendant's vehicle, a 1963 Chevrolet sedan, was his son, Royce Nelson Thompson, age 16. Plaintiff's son injured in the accident was Terry Van Randolph, also now known as Henry Sanford, Jr., who at the time of the accident was riding a bicycle. He was 12 years of age.
Alaska Street runs north and south, and West Roosevelt Street runs east and west. Both streets were of asphalt construction, 27 feet wide. The weather was clear and the streets' surfaces were dry. West Roosevelt Street is the favored street, as Alaska Street has a stop sign which requires all vehicular traffic to stop on Alaska Street before entering or crossing West Roosevelt Street.
Just prior to the time of this accident, young Henry Sanford was riding his bicycle south on Alaska Street, with two other boys riding double on another bicycle, trailing him by some 25 feet. It was his intention to proceed to West Roosevelt Street, turn left and go to the University Terrace School to play golf. When Henry came to West Roosevelt Street he proceeded, without stopping, into the intersection and to make a left turn. As he reached about the northeast quadrant of the intersection, he was struck by the Thompson vehicle which was traveling in a westerly direction on West Roosevelt Street.
This accident was investigated by the Baton Rouge Police Department. The investigating officers were Officers Ellis and Stamps. Only Officer Ellis testified. He testified that the speed limit for this area of the city was 30 miles per hour; and that the surface of the street presented a normal braking surface. In his investigation of the accident, he found that the Thompson vehicle laid down 32 feet of continuous skid marks before the point of collision and 48 feet of continuous skid marks past the point of collision. When he arrived at the scene, he found the Thompson vehicle crossways West Roosevelt Street west of the intersection with the front end on the curb on the south side of West Roosevelt Street. Damage to the Thompson vehicle was to the right front and a broken windshield. He said that Royce Thompson told him, at the scene of the accident, that he was traveling between 25 and 35 miles per hour. When he arrived at the scene he found Henry Sanford, Jr., under the vehicle, unconscious and bleeding. It was stipulated that the testimony of Officer Stamps would be the same as that of Officer Ellis.
The essence of David Spence, Jr.'s testimony is that he was riding about 25 feet to the rear of Henry; that he did not see the Thompson vehicle before it struck Henry, but he did see it hit Henry; and that Henry did not stop at the stop sign on Alaska Street before entering West Roosevelt Street to make the left turn. It was stipulated that the testimony of Robert Thomas, the boy riding behind David on the bicycle, *867 if he were to testify, would be the same as David's.
Henry Sanford, Jr., testified he could not remember any of the details of the accident, and this is understandable because of the severity of the injuries to his head, but he did admit that he did not stop before entering the intersection to turn left on West Roosevelt Street. He testified that he did not look to see whether a car was approaching on West Roosevelt Street and that he did not see the vehicle before it hit him.
This brings us to a consideration of the testimony of Royce Thompson. He testified that he didn't recall where he was on West Roosevelt Street when he first saw Henry, nor does he know where Henry was on Alaska Street when he first saw him, but he is positive he wasn't in the intersection; that when he first saw Henry, he put his foot on the brake and began to slow down, then when Henry came on out into the intersection he slammed on his brakes and cut his wheels to the left.
The trial court held that Henry, in not stopping before he entered the intersection was guilty of negligence, and that this negligence was the sole proximate cause of the accident. Further, the trial court stated that even if it felt the defendant's son was guilty of negligence in speeding, then Henry Sanford, Jr., was guilty of contributory negligence.
The plaintiff assigned four specifications of error of the trial court, and we will discuss each in the order presented in brief.
1. "The trial court erred in holding a 12 year old child to the same degree of care required of an adult."
As we appreciate the trial court's ruling, it held that Henry Sanford, Jr., was guilty of negligence in not stopping on Alaska Street for traffic on West Roosevelt Street. The trial court judge had the opportunity to see this youth, to observe his reactions and demeanor, and appraise his capabilities, and to make a conclusion as to the probability of his being mature enough to be guilty of committing a negligent act. As we understand the ruling of the trial judge, he did conclude that this youth was, in fact, negligent. This is not to say that the trial judge held him to the same degree of care as he would have, in a proper situation, an older and more mature person. Care in this respect would encompass one's reaction to a given situation, the exercise of choices and the making of decisions. From the record, it is obvious that Henry was old enough and adequately familiar with traffic regulations to know that he should stop at stop signs.
2. "The trial court erred by not considering the prior testimony and the trial testimony of the driver of the car wherein he testified he saw Henry Sanford, Jr., even before this child pre-empted the intersection."
In his reasons for judgment, the trial judge discusses the fact that Royce Thompson saw Henry Sanford, Jr., before the latter entered the intersection. The trial judge said:
"The testimony of the defendant was that he saw the boy, put his foot on his brake and realizing he was not going to stop, slammed on his brake and then cut to the left and skidded through the intersection, striking the bicycle with his right front headlight."
This is an accurate statement of young Thompson's testimony, and it appears that the trial judge considered it. This is the only reference we find in the testimony that young Thompson saw Henry before he, Henry, entered the intersection.
We cannot agree with plaintiff's statement of the principle of pre-emption. We do not believe that Henry pre-empted this intersection.
Overlaying the conditions of preemption is the requirement that one entering *868 an intersection from a less favored street do so with extra care and caution, and that the essential conditions of preemption which must be met by one pleading pre-emption are: (1) That a driver entering a favored street must regard the oncoming traffic, appraise the situation and govern himself accordingly; (2) That he must have entered the intersection first; and (3) That he must have entered the intersection with a reasonable opportunity and expectation of clearing the intersection without impeding the crossing thereof by other vehicles. See: Reinninger v. Delta Fire & Casualty Co. (La.App.1958) 106 So.2d 746.
Also, the court, in Sonnier v. United States Fidelity & Guaranty Co. (La.App.1955) 79 So.2d 635, said:
"The right of pre-emption is not accorded the driver who blindly enters a favored street, without regard to oncoming traffic, and then attempts to absolve himself of liability because of the mere fact that he was there first."
When we apply the conditions of pre-emption to the facts of this case, we cannot accord Henry Sanford, Jr., the benefit thereof.
3. "The trial court erred in not applying the last clear chance and discovered peril doctrines of negligence."
With the requirements of these doctrines, as laid down by the court in Guillory v. Allstate Insurance Company, (La.App.1957) 96 So.2d 866, and Rottman v. Beverly, (1936) 183 La. 947, 165 So. 153, and on which the plaintiff relies in his brief, as our guide, we do not believe this to be a case for application of this doctrine. We do not find nor see from the record how young Thompson could have discovered the peril of Henry more quickly than he did, nor do we believe he could have done anything other than what he did in an effort to avert the accident. We are dealing with very short distances and split second timing. In retrospect, we may feel that other action might have been taken that would have altered the outcome, but that is not the true test in judging the action and conduct of Royce Thompson. We must view his action and reactions in the light of the exigency of the occasion. In doing this, we do not find young Thompson had the last clear chance to avert the accident.
4. "The trial court erred in deciding its view of the scene could overrule the actual occurence and the admitted ability of the driver to actually see the child while he was still on Alaska Street."
The plaintiff failed to further discuss or elaborate on this specification of error. We find nothing that the trial judge said about this viewing the scene that contradicts the testimony given on the trial. The trial judge said:
"The Court approached this intersection twice in an automobile and found it difficult to see more than a few feet down Alaska Street and is of the opinion that the defendant could not have seen this bicycle for more than a second or so prior to the bicycle's entering the intersection. It is difficult to see an automobile coming out of Alaska Street at this intersection, let alone a bicycle."
This, and the other discussion of the court regarding the scene clarified the testimony describing the scene of the accident and actually made it more understandable, but the court's discussion did not overrule or contradict the positive testimony of any of the witnesses.
There is nothing to indicate to us that the trial court committed manifest error in this case. For the foregoing reasons, the judgment appealed from is affirmed.
Affirmed.