BEER, Judge.
Edwin Werner, Jr. filed this tort action against Ellau Sheppard and Werner’s uninsured motorist carrier, Patriot General Insurance Company (hereafter, “Patriot”), seeking recompense for injuries resulting from an intersectional collision between Werner’s bicycle and Sheppard’s uninsured automobile. Patriot then filed a third party demand against Sheppard for reimbursement of any award in favor of Werner and against Patriot. Trial resulted in judgment, without written reasons, in favor of Sheppard and against Werner who devolu-tively appeals.
Since Werner has acknowledged that he was riding his bicycle in the wrong direction on a one-way street, the sole legal issue now before us is whether Sheppard had the last clear chance to avoid the accident.
Sheppard testified that he was proceeding on Harmony Street. Upon reaching the intersection at Carondelet Street, he stopped “for a few seconds.” Normally, this intersection was controlled. Sheppard testified, and witness Jashim corroborated, that, at one time, a stop sign stood at the corner controlling traffic on Harmony but “. . . kids swung on it and tore it down.” At any rate, Sheppard, having stopped, looked down Carondelet, a one-way street, in the direction from which traffic would normally flow, saw it was clear, also ascertained that the intersection was clear, and proceeded forward. After traveling four or five feet from the stopped position and after only a “split second” had elapsed, his automobile collided with Werner’s bicycle which had come to be directly in front of it at the moment of contact. Concurrently, Sheppard “slammed the brakes on.” He *949 denies seeing the bicycle prior to the collision. Werner contradicts Sheppard on this point, contending that Sheppard was looking in his (Werner’s direction just before he started up from his stopped position.
Werner testified that he was riding close to the curb “at a very slow, casual speed, in low gear,” and maintained a constant speed until the time of impact. He saw that Sheppard had stopped at the intersection and so he continued traveling at a constant speed, expecting to clear that intersection before Sheppard would pull out across Car-ondelet Street. He acknowledges that he was proceeding in the wrong direction on a one-way street but contends that “the area was wide open and I would expect he would stop when he saw me coming.” When his bicycle was in the intersection, he suddenly heard the “gunning of the engine” and then Sheppard’s vehicle “lunged forward” to the point of impact and was “digging out.” The balance of Werner’s testimony was devoted to describing his injuries, treatment and resultant expenses.
Mrs. Joseph Hebert, Jr. was called by Werner whom she had known as an acquaintance of her daughter. She saw him soon after the accident and corroborated his testimony regarding his alleged injuries, noting that his head was bleeding, he was dazed, and “a little incoherent,” but could walk.
Mrs. Janice Fleming was also called by Werner. She also corroborated Werner’s alleged injuries but was of the view that the bike was not much damaged.
Miss Wadenis Jashim was called by Sheppard. She lives near the corner of Caronde-let and Harmony, and witnessed the accident from her porch where she was seated. She reports:
“Yes. The gentleman here in the chair (indicating), as he was coming, when Mr. Sheppard had stopped and went to pull off, he rode his bike in front of him, and Mr. Sheppard bumped him and he fell on the ground. He didn’t really hit him. It wasn’t a skid or a hard pull-off from the corner, and he fell from his bike.”
Werner contends that the trial judge erred in failing to apply the Doctrine of Last Clear Chance, claiming that the requisite elements of the doctrine were established by the uncontroverted testimony of both parties. Sheppard urges that he had no duty to look toward the direction from which Werner was coming, acted reasonably under the circumstances, and was not negligent at all — thus obviating any basis for the applicability of the doctrine.
In Scott v. Glazer, 164 So.2d 185 (La.App. 4th Cir., 1964), we noted that:
“A litigant relying upon the doctrine of last clear chance has the burden of proving all facts and circumstances essential to its application. Pate v. State Farm Mutual Automobile Ins. Co., La.App., 147 So.2d 766; Phares v. Biggs, La.App., 135 So.2d 507; Fontenot v. Travelers Indemnity Company, La.App., 134 So.2d 330; Lawrence v. Core, La.App., 132 So.2d 82; Franicevich v. Lirette, 241 La. 466, 129 So.2d 740. Before the doctrine can be successfully invoked three essential facts must be established: (1) that the person invoking the doctrine was in a position of peril of which he was unaware or from which he was unable to extricate himself; (2) that the person against whom the doctrine is invoked actually discovered or was in a position where he could and should have discovered such other person’s peril; and (3) that at such time the person against whom the doctrine is invoked could have avoided the accident with the exercise of reasonable care. Sonnier v. Great American Insurance Company, La.App., 134 So.2d 363; Lavigne v. Southern Farm Bureau Casualty Ins. Co., La.App., 125 So.2d 430; Clark v. Shannon, La.App., 120 So.2d 307; Wells v. Meshell, La.App., 115 So.2d 648; Moore v. Shreveport Transit Company, La.App., 115 So.2d 218; Newton v. Pacillo, La.App., 111 So.2d 895.”
These elements were again enunciated in Evans v. Johnson, 236 So.2d 285 (La.App. 4th Cir., 1970), and the numerous cases cited therein in support thereof.
*950 Werner relies upon Biggs v. Verbois, 151 So.2d 172 (La.App. 1st Cir., 1963) cert. ref. 244 La. 465, 152 So.2d 561. In that case, a bicycle rider entered an intersection from an unfavored street without looking either left or right and collided with a motorist traveling on a favored street. Our brothers in the First Circuit determined that the bicyclist was contributorily negligent and also determined that a motorist on a superi- or thoroughfare approaching an intersection has the right to assume that a bike rider would obey the law and bring her bicycle to a stop. However, they further determined that the motorist either realized or should reasonably have realized — in time to avoid an accident — that the bike rider was obviously going to continue into the intersection in disregard of the right of way. Thus, they concluded that the motorist had not exercised ordinary care nor maintained a proper lookout by disregarding the obvious. The court applied the Last Clear Chance Doctrine and concluded:
“Therefore, had Mrs. Verbois been keeping a proper lookout she could have and should have seen Patricia Biggs when she passed the stop sign and/or entered the intersection, and at either time there was more than sufficient distance between the two vehicles for her to have avoided the accident by sounding her horn or bringing her car to a stop. She had the last clear chance to avoid this collision.” (Emphasis ours.)
In the case at bar, only a “split second” elapsed between acceleration and impact. Furthermore, the uncontradicted testimony of Sheppard was that his vehicle had traveled only four or five feet from where he had stopped initially to the point of collision. Clearly, there was not sufficient distance between the two vehicles for Sheppard to have avoided the accident.
With this distinction in mind, it is important to note that in Sanford v. Thompson, 174 So.2d 865 (La.App. 1st Cir., 1965), writ ref. 248 La. 124, 176 So.2d 452, the First Circuit found Last Clear Chance inapplicable, holding:
“We do not find nor see from the record how young Thompson could have discovered the peril of Henry more quickly than he did, nor do we believe he could have done anything other than what he did in an effort to avert the accident. We are dealing with very short distances and split second timing. In retrospect, we may feel that other action might have been taken that would have altered the outcome, but that is not the true test in judging the action and conduct of Royce Thompson. We must view his action and reactions in the light of the exigency of the occasion. In doing this, we do not find young Thompson had the last clear chance to avert the accident.” (Emphasis ours.)
In Ratliff v. All State Ins. Co., 149 So.2d 100 (La.App. 3rd Cir., 1963), a bicyclist entered an intersection, disregarding a stop sign. Neither he nor the approaching motorist saw the other prior to the collision. The court upheld the trial court’s finding of negligence on the part of both parties but was unwilling to impose the Last Clear Chance Doctrine since “. . . allowing for reaction time, she (defendant) could not reasonably have avoided the accident after the motor bike (plaintiff) suddenly entered the intersection towards and across her path.”
In Mugnier v. Checker Cab Company, 309 So.2d 747 (La.App. 4th Cir., 1975), plaintiff was riding her bicycle on General Pershing, a one-way street, the wrong way. At the intersection with St. Charles Avenue, she stopped and observed a taxi in the neutral ground crossing of General Pershing with its left turn indicator blinking. The taxi driver was not looking at plaintiff but rather to his right at the oncoming traffic. The plaintiff proceeded to cross St. Charles Avenue and the taxi driver concurrently made his left turn with the inevitable collision resulting. We concluded, inter alia, that:
1. The taxi driver was negligent for not looking in the direction he was traveling immediately prior to the accident;
2. The plaintiff was guilty of contributory negligence for riding the wrong *951 way down a one-way street, and, for proceeding after plaintiff noticed defendant about to turn left; and
3. The Last Clear Chance Doctrine was not applicable since defendant could not have avoided the accident and was under a more compelling obligation to look to his right for oncoming traffic.
Finally, in Klibert v. Brewer, 301 So.2d 889 (La.App. 4th Cir., 1974), writ den. La., 305 So.2d 131, the following facts existed:
“The accident occurred on a clear afternoon in a residential subdivision in La-Place, Louisiana. As defendant was proceeding along Madewood Road in a westerly direction he approached a “T” intersection with Melrose Lane entering Madewood from the south when Miss Kli-bert, who had been riding her bicycle in the same direction on the north sidewalk of Madewood, came from the sidewalk and a driveway into the path of his car.” In reversing the trial court, we held that: “Brewer was traveling within the speed limit. He was under a duty to observe Madewood Road ahead of him and Mel-rose Lane to his left so as to be on the lookout for other vehicles. He was not under any duty to peer around every parked automobile and to keep his attention focused on the sidewalk to his right so as to be on the lookout for pedestrians, but on the contrary he had a right to assume that any pedestrians would remain in their positions of safety off the roadway. Even had Brewer seen Miss Klibert, which he could not and did not, he would have had the right to assume that she would remain on the sidewalk or driveway until he passed.”
Here, Werner, by his own admission, én-tered the intersection traveling in the wrong direction on a one-way street. He admitted seeing Sheppard’s car approaching the intersection some time before he reached it but presumed Sheppard would stop.
Sheppard’s duty was to observe the street ahead of him and to observe properly directed traffic on Carondelet as he approached the intersection. He had a right to assume that vehicles would not be traveling in the wrong direction on Carondelet. He could not reasonably foresee, nor had he a duty to anticipate, that someone would violate the law in the manner acknowledged by Werner. Applying the duty-risk formula, we conclude that Sheppard’s duty did not encompass the risk of harm which materialized herein. Last Clear Chance is not applicable. Only a “split second”— enough time for the vehicle to travel four or five feet — elapsed from the moment of acceleration to the time of impact. Sheppard did not have sufficient time to avoid the accident. Werner’s contention that Sheppard “should have discovered” Wer-ner’s peril is untenable.
The judgment is not manifestly erroneous and is affirmed, all costs of this appeal to be borne by the plaintiff-appellant.

AFFIRMED.