ARMSTRONG, Judge.
This is a pedestrian-car collision case. The plaintiff pedestrian, Louis Mutart, Jr., appeals an adverse jury verdict which found the driver of the car, Kathleen Nes-bitt, not to have been negligent. We find that the jury’s decision was not manifestly erroneous or clearly wrong, that the trial court’s instructions to the jury contains no reversible error and that there was no reversible error in the trial procedure. Accordingly, we affirm.
At the time of the accident, Mutart was employed as an exterminator. He had parked his employer’s truck on the side of Constance Street next to an apartment building where he would be working. While Mutart was working alongside the apartment building, he told a new tenant, who was moving in, that she should not park her car in a particular spot because he would be spraying there. The new tenant then proceeded to park her car on the other side of Constance Street, i.e. the side opposite the apartment building. Then, Mutart changed his mind, and decided to tell the new tenant that she could, after all, park in the spot that he previously asked her to leave vacant for the spraying.
Constance Street is a one-way street. As one faces across Constance Street from Mutart’s position the direction of traffic is from the left, the intersection of Howard Avenue and Constance is to the left and the intersection of St. Joseph and Constance is to the right. Mutart was located near the middle of the block and the new tenant was located closer to the intersection of St. Joseph Street. Thus, the new tenant with whom Mutart wanted to speak was located across Constance Street and somewhat down the block in the direction opposite to the direction from which traffic would come on Constance Street. Consequently, to the extent Mutart directed his attention toward the new tenant’s location, he necessarily would be directing his attention away from the direction from which the traffic would come.
Mutart testified that he looked to his left, towards the intersection of Howard Avenue, saw no cars, and then shouted to the new tenant while almost simultaneously beginning to cross Constance Street at an angle in the direction of the new tenant — i.e. not squarely perpendicular to the direction of Constance Street but an angle somewhat to his right. Thus, Mutart was crossing Constance Street in about the middle of the block with his attention, and *805 presumably his whole body, angled away from the direction of traffic. As Mutart was crossing Constance Street there was a collision between him and Kathleen Nes-bitt’s car. In particular, it was a portion of Mutart’s back that came into contact with the Nesbitt car, which confirms that Mu-tart was turned somewhat away from the direction from which traffic would come on Constance. Mutart testified that approximately three seconds elapsed between the time he looked to his left towards the intersection of Howard Avenue and Constance Street and the time of his collision with the Nesbitt ear. There was no corroboration of this testimony by Mutart.
Kathleen Nesbitt turned from Howard Avenue onto Constance Street immediately prior to the collision of her car and Mutart. Her mother, Virginia Nesbitt, was a passenger in her car. Kathleen Nesbitt testified that she never saw Mutart until after the collision of the car. Similarly, Mutart never saw the Nesbitt car. The only witness who actually saw the collision was passenger Virgina Nesbitt, who testified:
[S]he was going slow. We was looking at the names [of the streets] to see to try to turn back. This man was coming this way and I kept watching him and first thing you know I was stunned. He just walked right into the side of the car. And he just hit it so hard he fell backwards.
* * * * * *
He didn’t — she didn’t hit him from the front. She hit him from the side. She didn’t hit him. That’s wrong. He hit her.
This testimony was uncontradicted. Neither Virginia Nesbitt nor her daughter was a defendant.
Undoubtedly, there were factual issues as to exactly what happened and as to the reasonableness of the conduct of both the driver of the car and the pedestrian. For example, how fast Nesbitt really was driving and was it really only three seconds from the time Mutart looked left for oncoming cars until the time of the impact? Also for example, was there any violation of Kathleen Nesbitt’s duty to keep a lookout for and to avoid pedestrians in view of the fact that the collision occurred between the side of her car and Mutart? These were issues for the jury, and we may not set aside a jury’s verdict of no negligence unless it is manifestly erroneous or clearly wrong.
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong”, and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. ... The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. When there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. ... In applying the manifestly erroneous — clearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo.... When finding's are based on determinations regarding the credibility of witnesses, the manifest error — clearly wrong standard demands great deference to the trier of fact’s findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on a listener’s understanding and belief in what is said. ... Where documents or objective evidence so contradict the witness’ story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’ story, the court of appeal may well find manifest error or clear wrongness even in a find *806 ing purportedly based upon the credibility determination ... But where such factors are not present, and a fact finder’s finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989). Viewed in light of the role of the appellate court as to the issues of fact, the jury’s verdict in this case must be affirmed.
Mutart argues that, in light of the great difference in risk posed to others, the law imposes a much more stringent duty of care upon drivers than upon pedestrians when determining fault (if any) in a collision of a motor vehicle with a pedestrian. See Baumgartner v. State Farm Mutual Automobile Insurance Co., 356 So.2d 400 (La.1978); Turner v. New Orleans Public Service Inc., 476 So.2d 800 (La.1985). The Baumgartner decision, decided at a time when contributory negligence of the plaintiff resulted in a complete bar to recovery, found the defense of contributory negligence of a pedestrian inapplicable to pedestrian-motor vehicle collision cases (at least when the pedestrian was in a pedestrian crosswalk.) The Turner decision, decided after the legislative adoption of comparative negligence as a partial bar to recovery, found the Baumgartner rule no longer necessary, but found that the fault of the pedestrian in that case, who was hit while in a crosswalk, was only “slight” (specifically 10%).[1]
Mutart argues, in light of the analysis leading to a finding of only slight pedestrian fault in Turner, that “the Baumgart-ner philosophy of favoring the pedestrian lives on even after the adoption of comparative negligence in Louisiana”. However one characterizes Baumgartner or Turner, it is clear that neither decision makes the driver strictly liable or otherwise relieves the pedestrian of the burden of showing driver negligence in a pedestrian-motor vehicle collision case.
In Baumgartner this Court stated that in motor vehicle/pedestrian collisions, contributory negligence is not available as a defense and thus the last clear chance doctrine, used to avoid the harsh results of contributory negligence, is not at issue. That ruling was designed to compensate for the lack if mutuality of risks involved between motor vehicles and pedestrians. However, we did not impose absolute liability on a driver of an automobile simply where there is a collision between a car and a person. Nor did we say that the motorist is to be held liable irrespective of fault on his part. In fact, in Baumgartner we clearly stated “that a motorist who exercises all reasonable care to protect a pedestrian, who nonetheless suffers injury, is not at fault.” 356 So.2d at 406. The operator of a motor vehicle must therefore be at fault in order to be held liable. This requisite was not eliminated by Baum-gartner.
Aetna Casualty and Surety Co. v. Nero, 425 So.2d 730, 733 (La.1983). Accord Greenup v. Maginnis, 446 So.2d 485, 486 (La.App. 4th Cir.1984) (driver not strictly liable, plaintiff pedestrian must prove some driver negligence).
As to the issue of whether Kathleen Nesbitt was negligent, it is clear that she had a duty to keep a proper lookout, maintain reasonable vigilance, see what she should have seen and to drive prudently and exercise reasonable care under the circumstances. See, e.g., Hebert v. Lefty’s Moving Service, 389 So.2d 855, 857 (La.App. 4th Cir.1980); Nelson v. Evans, 470 So.2d 212, 214 (La.App. 4th Cir.1985); Whatley v. Regional Transit Authority, 563 So.2d 1194, 1197 (La.App. 4th Cir.), writ denied, 569 So.2d 965 (La.1990), Vaccaro v. Sports & Imports, Inc., 539 So.2d 989, 990 (La.App. 4th Cir.), writ denied, 541 So.2d 1391, 1392 (La.1989). But these duties of Kathleen Nesbitt must be viewed in light of the peculiarity of the factual situation in this case — Mutart collided with *807 the side of the Nesbitt car. Drivers generally must focus their attention to the front, to see what is in their path or what might be entering or about to enter their path. The jury could properly find that Kathleen Nesbitt’s failure to see Mutart approach her car from the side does not reflect any negligence on her part. See generally McKenzie v. New Orleans Public Service, Inc., 455 So.2d 678 (La.App. 4th Cir.), writ denied, 460 So.2d 1043 (La.1984) (child frightened by dog ran into side of bus, driver found not negligent).
Mutart next argues that: “Since Mutart and [Kathleen] Nesbitt were the only parties who could have been at fault, in this accident; the jury’s verdict exonerating Nesbitt from liability means that the jury concluded that Mutart was 100% negligent.” Mutart then attacks this supposed allocation of 100% comparative fault of Mu-tart and in that regard cites Baumgartner, Turner and Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985) (factors influencing degree of comparative fault to be assigned). Mutart is incorrect as to this argument. First, as it was properly instructed by the trial court, after finding Kathleen Nesbitt was not negligent, the jury did not have to go on to answer the other jury interrogatories including those as to comparative fault of Mutart. Second, it is not correct that the jury necessarily had to conclude that anyone was at fault — This may have been one of the accidents that occur despite reasonable care by everyone involved. Third, Baumgartner, Turner and Watson, unlike the present case, all rest on a finding that a defendant was in some degree at fault. In sum, in the present case, there was no occasion for Mutart’s fault, if any, to be determined.
Mutart also argues that the trial court erred by declining Mutart’s request to specifically instruct the jury that: “The greater the risk of harm to others, the greater is the fault.” Turner, 476 So.2d at 805. The trial court’s instructions to the jury included the following:
Now negligence is conduct which falls below the standard of care which we might expect from a reasonable person exercising ordinary care and prudence under the circumstances in which he or she finds themselves. We’re talking about a reasonable standard of conduct. Obviously reasonable as used here is a relative term. Conduct which in one situation might be deemed reasonable might in other situations be deemed unreasonable. You should judge the conduct in this case using your own experience and common sense. It is for you then to determine whether or not the conduct in this constitutes negligence. To make the decision on whether negligence has been proven, you may consider the following: The operator of a motor vehicle is under a duty to maintain a proper lookout. The driver is presumed to see whatever he or she should or could see. A pedestrian has a duty to maintain a proper lookout and a duty to see what he or she could or should see. The pedestrian has a duty not to leave a place of safety until it is safe to do so. If a motorist sees a person in a position of safety, the motorist can assume that the person will not leave that position of safety until it is safe to do so. A motorist who is confronted with a sudden emergency without sufficient time to weigh and consider all circumstances are the best means by which may be adopted to avoid an impending danger is not required to exercise such control or degree of care and caution as is required of a motorist who has ample opportunity to fully exercise judgment and reason. An operator of a vehicle who observes or who should exercise reasonable care who has observed a pedestrian in a position of peril by which the latter is apparently unaware has a duty to avoid injuring the pedestrian if he or she can reasonably do so.
We review the above-quoted instruction only with regard to the specific point from the Turner case raised by Mutart on appeal. In that regard, we find no reversible error. The trial judge was not obligated to give the precise instruction requested by Mutart so long as the instruction, taken as *808 a whole, properly reflected the law. Goldan v. Allstate Ins. Co., 543 So.2d 496 (La.App. 4th Cir.1989), writ denied, 550 So.2d 631 (La.1989); Nguyen v. Pausina, 607 So.2d 675 (La.App. 4th Cir.1992); Pullen v. Ziegler 562 So.2d 1093 (La.App. 4th Cir.1990), writ denied 567 So.2d 106 (La. 1990). Regardless of whether an addition to the jury instructions incorporating Mu-tart’s would have been helpful, the jury instruction as given was not insufficient for want of the requested instruction. The trial court’s emphasis on “ordinary care and prudence” in light of the specific situation involved, combined with the instructions as to the driver’s duty to maintain a proper lookout”, was sufficient to address Mutart’s concern. Moreover, the passage from Turner upon which Mutart relies addressed determinations of comparative degree of fault when both plaintiff and defendant are at fault, a determination not reached in this case in which Kathleen Nes-bitt was not found to be negligent.
Finally, Mutart argues that there was an error of trial procedure during the jury’s deliberations. Specifically, Mutart asserts that:
After the jury had retired while the attorneys were waiting in the courtroom, the court advised all counsel in this case that the jury requested further clarification relative to a case about which the court had instructed them. The court informed all counsel that he would advise the jury that if they wanted further clarification, they would have to ask to come back into the courtroom in order to make their request. Undersigned counsel discussed with the Court the procedure for dealing with jury questions. The Court emphasized that the only way that he allows the jury to ask questions is in open court. Yet the Court did not have the courtroom deputy or anyone else escort the jury back to the courtroom to make the request; however, prior to that occurring, the court advised all counsel that the jury had reached its verdict.
However, none of the above described proceedings were on the record. More important, no objection to any of the above described proceedings were made. In the absence of any record or any objection, no error, if there was any, was preserved for appeal. Moreover, no error is apparent. The trial court’s procedure of bringing the jury back into the courtroom if the jury sought further instruction is, of course proper. La.Code Civ.Proc.Art. 1796. If the jury decided that, instead of receiving further instruction they would prefer to go ahead and reach a verdict, that is the jury’s prerogative.
For the foregoing reasons the judgment of the trial court is affirmed at appellant’s costs.
AFFIRMED.

. Unlike the pedestrians in Baumgartner and Turner, Mutart did not cross the street at a corner, much less in a pedestrian crosswalk. Compare Aetna Casualty and Surety Co., 425 So.2d 730 (La.1983) (pedestrian not in crosswalk and driver held not negligent).