654 So.2d 1117 (1995)
Karl ARCENEAUX
v.
Joseph A. WALLIS and Lafayette Insurance Company.
No. 94-CA-2016.
Court of Appeal of Louisiana, Fourth Circuit.
April 26, 1995.
*1118 Patricia D. Miskewicz, Joseph C. Seyler, New Orleans, for plaintiff/appellee.
Peter M. Meisner, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, for defendants/appellants.
Before BYRNES, PLOTKIN and JONES, JJ.
PLOTKIN, Judge.
Defendant Joseph Wallis appeals a trial court judgment awarding plaintiff Karl Arceneaux $14,447.99 damage award for injuries he sustained in a collision between Wallis' automobile and Arceneaux's bicycle. We amend the judgment and, as amended, affirm.

FACTS:
On October 23, 1992, Arceneaux was riding his bicycle the wrong way up Burgundy Street, a one-way street located in the French Quarter. He had almost completely crossed the intersection at St. Ann Street when the rear wheel of his bicycle was struck by the right front bumper of a car driven by Wallis. Arceneaux stated that Wallis rolled through the stop sign, hit the bicycle's rear tire and rolled over it. Arceneaux's version of the accident was corroborated by Jeff Taylor, the driver of the vehicle which was following Wallis' vehicle at the time of the accident. The investigating police officer cited Arceneaux for driving against traffic and Wallis for failing to see a vehicle already in the intersection. Arceneaux sustained a number of minor injuries from the collision, but was able to return to work after just a few days.
Following the bench trial that commenced on June 21, 1994, the trial court made the following findings of fact: (1) that Arceneaux had pre-empted the intersection, (2) that no ongoing traffic was present, 3) that Wallis failed to come to a complete stop at the stop sign before proceeding into the intersection, (4) that Wallis failed to look to his left when proceeding through the intersection, and (5) that Wallis was aware of the danger routinely presented by pedestrians and bicyclists proceeding the wrong way in the French Quarter. The court recognized that Arceneaux was travelling against traffic on a one-way street, but noted that had defendant kept an eye out for pedestrians and cyclists before he entered the intersection, he would have avoided the collision with Arceneaux. Accordingly, the court awarded Mr. Arceneaux $12,000 in general damages, $180.00 in lost wages, $2,142.99 for medical expenses, and $125.00 for the cost of replacing the bicycle, which was wrecked beyond repair, for a total of $14,447.99.
On appeal, Wallis makes two alternative assignments of error: (1) that he owed no duty to Wallis because Wallis was travelling the wrong way on a one-way street and Arceneaux had no reason to anticipate his presence at the point of impact, or (2) that Wallis should have been assigned some percentage of liability for his comparative negligence in causing the accident. Wallis also contests the quantum of the damage award, claiming both that the general damage award *1119 was excessive and that Arceneaux failed to offer competent proof of the value of the wrecked bicycle to support the award for that item of damages.[1]

Wallis' liability for the accident
Wallis argues that he owes no duty to a cyclist who violates LSA-R.S. 32:78B, 193, 194 by travelling the wrong way on a one-way street. Because a wrong-way driver is an unexpected and unanticipated hazard, the driver stopped at a stop sign is under no obligation to check for such unforeseen occurrences, Wallis says.
Although Wallis' statement of the law is generally correct, each intersectional accident is dependent upon and must be decided on its own facts. Ball v. Marquette Casualty Co., 176 So.2d 799 (La.App. 4th Cir.), writ denied, 248 La. 417, 179 So.2d 16 (1965). Moreover, a driver has a duty to see what should be seen and to exercise reasonable care under the circumstances. Mutart v. Allstate Insurance Co., 622 So.2d 803, 806 (La.App. 4th Cir.), writ denied, 629 So.2d 416 (La.1993).
Wallis cites Werner v. Patriot General Insurance Co., 339 So.2d 948 (La.App. 4th Cir. 1976), writ denied, 341 So.2d 1123 (La.1977) in support of his contention that a motorist has no duty to anticipate a wrong-way driver. The Werner court, in finding for the defendant driver, stated as follows:
[Defendant's] duty was to observe the street ahead of him and to observe directed traffic on Carondelet as he approached the intersection. He had a right to assume that vehicles would not be travelling in the wrong direction on Carondelet. He could not reasonably foresee, nor had he a duty to anticipate, that someone would violate the law in the manner acknowledged by [plaintiff].

Id. at 951 (emphasis added).
The facts in Werner, however, are easily distinguishable from the case at bar. First, the cyclist in Werner stopped completely at the intersection, then darted out into the intersection in order to beat the driver stopped on the cross street. Here, Arceneaux had almost traversed the entire intersection when Wallis struck him.
A driver can be at fault in an intersectional collision even if he has the right of way if he fails to see what he should see had he kept a proper lookout. See Snyder v. Taylor, 523 So.2d 1348, 1353 (La.App. 2d Cir.), writ denied 531 So.2d 268 (La.1988). After hearing all the conflicting evidence in the instant case, the trial court found that Wallis neither kept a proper lookout nor stopped at the stop sign as he asserts. Both Arceneaux and Taylor testified that Wallis made a rolling stop through the stop sign. The decision to credit the testimony by Arceneaux and Taylor over the testimony of Wallis is a credibility call which cannot be reversed by this court in the absence of manifest error.
Further, the physical evidence supports the trial court's finding. Wallis's failure to stop seems clear in light of the position of the bicycle at the time of the accident. Wallis's right front bumper struck the back wheel of the bicycle after Arceneaux had pedaled almost completely across St. Ann Street. Had Wallis been more attentive to his driving and stopped at the stop sign, he would have seen the oncoming cyclist who, by the time of the accident, was nearly out of Wallis's path. By keeping a proper lookout and stopping at the stop sign, Wallis could have avoided the collision. Under the circumstances, Wallis failed to exercise reasonable *1120 care. If he had, he would have seen Arceneaux, a reasonably foreseeable danger under the circumstances, crossing the street in front of him. Thus, we find no manifest error in the trial court judgment imposing liability for the accident on Wallis.

Arceneaux's comparative negligence
The conduct of Arceneaux must also be examined in apportioning fault in this case. In Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985), the Supreme Court delineated a number of factors to be considered when assigning fault to drivers of two vehicles involved in a collision, including the following:
1) whether the conduct resulted from inadvertence or instead involved conscious awareness of danger, 2) how great of a risk of injury was created by each driver's conduct, 3) the significance of what was sought by the conduct, 4) the capacities of the driver, whether superior or inferior, and 5) the need to proceed in haste or without proper thought.
Id. at 974.
A review of these factors reveals that Arceneaux's behavior indeed contributed to his own injuries. Although Arceneaux and other bicyclists customarily ride against the flow of traffic in the French Quarter, that activity is both dangerous and reckless, as well as a violation of traffic laws. While Wallis was certainly inattentive to his driving, Arceneaux's presence could be a surprise to even the most diligent driver. Furthermore, the record shows that Arceneaux was already forty-five minutes late for work and risked his own safety in order to save a few minutes. Accordingly, we amend the trial court judgment to assess 40 percent comparative negligence to Arceneaux and to assess 60 percent of the fault for the accident to Wallis.

Quantum
Wallis also contests the quantum of the damages awarded Arceneaux, claiming both that $12,000 in general damages was excessive and that Arceneaux failed to prove the value of the bicycle by competent evidence and thus was not entitled to recovery of the $125 awarded for loss of the bicycle.
Wallis' argument that the general damage award is excessive is based primarily on the fact that Arceneaux missed only four days of work immediately following the accident and the fact that Arceneaux continued to engage in a series of physically-demanding occupations during the period between the accident and the trial.
In its most recent pronouncement on the issue of appellate court modification of general damage awards, the Louisiana Supreme Court stated that "the discretion vested in the trier of fact is `great,' and even vast, so that an appellate court should rarely disturb an award of general damages." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The first level of analysis in determining whether to modify a quantum award is to consider "whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the `much discretion' of the trier of fact." Id. at 1260.
After considering all the record evidence in the instant case, we find that the $12,000 general damage award is not a clear abuse of the trial judge's much discretion. The record indicates and the trial judge found that Arceneaux continued to experience physical problems caused by the accident more than a year following the accident when he first visited Dr. Blamphin. During the intervening period, Arceneaux was treated by a chiropractor. Further, this court cannot presume that the award is excessive simply from the fact that Arceneaux returned to work within four days and continued to work between the accident and the trial in light of the uncontested fact that Arceneaux was responsible for supporting his family, which included two children. We find no abuse of the trial court discretion and thus affirm the $12,000 general damage award.
However, Wallis' arguments concerning the fact that Arceneaux failed to present competent evidence to prove the value *1121 of the damaged bicycle has merit. The introduction of an estimate from a bicycle repair shop is hearsay evidence in the absence of the testimony of the party who prepared the estimate. Thus, the trial court judgment is amended to delete the $125 award for the bicycle.

Conclusion
The trial court judgment imposing liability on Wallis is affirmed. However, the judgment is amended to impose 40 percent comparative negligence for the accident on Arceneaux and 60 percent liability on Wallis. Further, the judgment is amended to delete the $125 award for the damaged bicycle, making the total damage award $14,322.99.
AMENDED; AS AMENDED, AFFIRMED.
NOTES
[1] Wallis also makes an assignment of error concerning the trial judge's alleged failure to apply a presumption of negative testimony from the fact that Wallis failed to call his original treating physician following the accident. However, since the trial court failed to mention the original treating physician in her oral reasons for judgment, we are unable to find that the trial judge failed to apply any negative presumption from the absence of the original treating physician. Further, Wallis's argument fails to explain how such a negative presumption would have affected the judgment. Most importantly, however, the caselaw has clearly established that the negative presumption does not apply when the defendant could as easily have called the physician to testify as the plaintiff. See Hernandez v. Schwegmann Giant Supermarkets, 464 So.2d 902, 907 (La.App. 4th Cir.1985). Thus, we find no merit in the plaintiff's arguments on this issue.