1 iKLEES, Judge.
Defendant, the City of New Orleans, [hereinafter “the City”] appeals the trial court’s *1034 judgment awarding damages to plaintiffs, James and Mary Reynolds. We affirm.
On February 8, 1987, shortly before 9:00 p.m., defendant Irma Dixon, a City employee, was driving a City-owned vehicle when it collided with a bicycle being ridden by plaintiff James Reynolds, injuring Mr. Reynolds. The accident occurred at the intersection of Basin Street and Canal Street in New Orleans. Ms. Dixon had three passengers in her automobile: Ruben Dixon, her husband, who was in the front seat; Brigette DePland, who was in the back seat behind the driver; and Adelaide Favre Wall, who was in the back seat directly behind Mr. Dixon. As a result of the accident, James Reynolds, who was twenty-four years old at the time, sustained brain damage causing him to have a diminished mental capacity and severely altered personality, and rendering him incapable of working for the rest of his life. James Reynolds has been declared an interdict and lives at home with his mother Mary Reynolds, who cares for him and handles all of his affairs.
Following the accident, plaintiffs filed suit against Irma Dixon and the City. The case was tried in civil district court without a jury on March 20-21,1995. At trial, it was stipulated that Ms. Dixon was in the course and scope of her employment with the City at the time of the accident, and that the plaintiffs were no longer pursuing their claims against Ms. Dixon individually. On May 3, 1995, the trial court rendered judgment finding Ms. Dixon, for whose conduct the City is vicariously liable, to be 40% at fault in causing the accident, and the plaintiff, James Reynolds, to be 60% at fault. The court further found that James Reynolds ^sustained total damages of $359,567.50 ($350,000.00 in general damages plus $9,567.50 in medical bills), of which he was entitled to recover $143,827.00 (forty percent) plus interest and costs. The court declined to award any damages to Mary Reynolds on her claim for loss of her son’s consortium.
The City has suspensively appealed this judgment, contending that the trial judge erred in assigning any degree of fault to Ms. Dixon. Conversely, plaintiffs assert that the trial court’s allocation of fault was not manifestly erroneous and additionally, argue that the court erred in awarding insufficient damages to James Reynolds and in failing to award any damages to Mary Reynolds. With regard to the issue of liability, we find, after reviewing the record, that the trial judge did not commit manifest error. As to the quantum issues, we have not considered plaintiffs’ contentions on appeal because plaintiffs have neither appealed in their own right nor filed an answer to the appeal, and therefore are not entitled to any affirmative relief. La.Code Civ. Pro. art. 2133.
The evidence at trial included the testimony of the four persons riding in the Dixon vehicle, as well as the testimony of Mary Reynolds, her daughter Juanita Reynolds, and plaintiffs’ two experts, Dr. Andrew Calhoun (medical expert) and Mr. Fred Vander-brook (engineer and accident reconstructionist). All four individuals in the Dixon vehicle testified that Ms. Dixon, who was traveling west on Basin Street, had the green light as she proceeded through the intersection. In fact, Ms. DePland stated that she looked up just before they reached the intersection, and saw the light change from red to green. There was no contradictory evidence, and based on this testimony, the trial judge specifically found that Ms. Dixon had a green fight.
There was conflicting evidence, however, as to two significant facts: (1) whether Ms. Dixon’s vehicle was traveling in the center or the far right lane of Basin; and (2) whether Mr. Reynolds was riding his bicycle east on Canal Street | 3(with traffic) or west (against traffic). As to the first point, Ms. Wall testified and the police report showed that Ms. Dixon was in the far right lane; however, Ms. Dixon and her other two passengers insisted that they were in the center lane.
. With regard to the other, more critical issue, the police report reflects that Ms. Dixon stated at the time of the accident that the bicycle came from Claiborne Avenue going riverbound, therefore traveling east. The sketch on the police report indicates that the bicycle came from Ms. Dixon’s right, partially crossed in front of Ms. Dixon’s vehicle, and was struck by the left front of the vehicle. Nevertheless, Ms. Dixon testified at trial that *1035 the police report was wrong and that the bicycle actually came from her left in a westerly direction and struck her vehicle on the left side near the front. All three passengers stated that they saw “a flash” come from the left and then felt Mr. Reynolds being thrown against the car’s windshield. Plaintiffs expert, Mr. Vanderbrook, relying primarily on the physical evidence (such as the direction in which the bike was bent), opined that the bike had come from Ms. Dixon’s right. Mr. Vanderbrook had also reviewed the police report prior to reaching his conclusion. The officer who actually wrote the police report was unavailable to testify, but his deposition was introduced into evidence. He stated in his deposition that he had no independent recollection of this accident which could confirm or contradict the contents of the police report.
The direction of travel of the bicycle is significant because presumably, if the bicycle was traveling east and crossed in front of part of the Dixon vehicle before being struck, Ms. Dixon would have to had more time and opportunity to observe the bicycle. Although Ms. Dixon testified that she put on her brakes “hard” as soon as she saw the bicycle, there were no skid marks found at the site. The evidence also showed that: the intersection was well lit; Ms. Dixon was driving at a speed of thirty miles per hour, which is the maximum for the street; |4James Reynolds was wearing dark clothing; and Reynolds was riding a child’s bike with a twenty-inch wheel base and no reflector on the front.
Based on the totality of the evidence, the trial court found that the Dixon vehicle was in the center lane and the bicycle came from the vehicle’s left. The trial judge also concluded that Ms. Dixon bore 40% of the liability for the accident, with Mr. Reynold’s bearing the remaining 60%. The trial court relied on Patterson v. Meyers, 583 So.2d 79, 82 (La.App. 4th Cir.1991), in which this court stated that a motorist approaching an intersection has a duty to watch vigilantly for pedestrians and vehicles caught between a light change and cannot depend exclusively on a favorable light.
The City argues on appeal that the trial court’s judgment should be reversed because there was no evidence of any fault on the part of Ms. Dixon. The appellate standard of review mandates that we cannot reverse the trial court’s factual conclusions unless we determine from the record in its entirety that no reasonable factual basis exists for those conclusions and that those conclusions are manifestly erroneous. Stobart v. State Through DOTD, 617 So.2d 880, 882 (La.1993).
In light of the record, we cannot say that the trial court’s conclusions in the instant case are manifestly erroneous. The allocation of 40% fault to Ms. Dixon is reasonable in view of the evidence that she entered an admittedly busy, large intersection at the maximum allowable speed and failed to maintain a sufficient lookout such that she did not see the bicycle in time to at least attempt to avoid the collision. The evidence showed that Ms. Dixon did not brake hard enough to create skid marks, nor did she swerve to avoid the bicycle. In a recent case, we affirmed a decision holding a motorist 60% liable in an intersectional collision between the motorist and a bicyclist, even though the motorist had the right of way and the bicyclist was proceeding the wrong way down a one-way street. Arceneaux v. Wallis, 94-2016 (La.App. 4th Cir. 4/26/95) 654 So.2d 1117. In that case, we noted that the driver can be at fault in an intersectional collision even if he has the right of way, if he fails to see what he should see had he kept a proper lookout. Id (citing Snyder v. Taylor, 523 So.2d 1348, 1353 (La.App.2d Cir.), writ denied 531 So.2d 268 (La.1988). Under the facts of the instant case, it is reasonable for the trial court to have found Ms. Dixon 40% liable for failing to see the bicyclist sooner, whether he was coming from her right or from her left.
Accordingly, for the reasons given, we affirm the judgment of the trial court.

AFFIRMED.